# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

**v.**

### Captain MASON W. MANDY
### United States Air Force

### ACM 38227

### 10 April 2014

### _____ M.J. _____

Sentence adjudged 19 July 2012 by GCM convened at Eglin Air Force Base, Florida. Military Judge: W. Thomas Cumbie and Joshua E. Kastenberg.

Approved Sentence: Dismissal and confinement for 12 months.

Appellate Counsel for the Appellant: Major Zaven T. Saroyan and Major Ja Rai A. Williams.

Appellate Counsel for the United States: Colonel Don M. Christensen; Lieutenant Colonel Nurit Anderson; Major John M. Simms; and Gerald R. Bruce, Esquire.

Before

ROAN, HARNEY, and MITCHELL
Appellate Military Judges

OPINION OF THE COURT

This opinion is subject to editorial correction before final publication.

MITCHELL, Judge:

A general court-martial composed of officer members convicted the appellant, contrary to his pleas, of one specification of absence without leave (AWOL); two specifications of willfully disobeying a superior commissioned officer; one specification of dereliction of duty; and one specification of malingering, in violation of Articles 86,

90, 92,[1] and 115, UCMJ, 10 U.S.C. §§ 886, 890, 892, 915.[2]  The adjudged sentence consisted of a dismissal and confinement for 2 years.  The convening authority approved the dismissal but reduced the term of confinement to 12 months.

On appeal the appellant asserts four errors:  (1) The members' findings by exceptions and substitutions on the malingering specification resulted in a material variance; (2) The evidence supporting the AWOL specification was legally and factually insufficient; (3) Trial counsel's sentencing argument contained improper argument; and (4) Delayed post-trial processing deprived the appellant of his right to a timely appellate review.  We agree there was a material variance at findings that materially prejudiced the rights of the appellant and therefore set aside Specification 1 of the Fourth Additional Charge for malingering.

*Background*

The appellant was assigned as a surgeon to the 96th Surgical Operations Squadron, Eglin Air Force Base (AFB), Florida.  Prior to his court-martial, he received four nonjudicial punishment actions pursuant to Article 15, UCMJ, 10 U.S.C. § 815, for various acts of misconduct, including AWOL, disobeying a superior commissioned officer, dereliction of duty, and making a false official statement.  As a result, on 13 October 2011 involuntary discharge proceedings were initiated against the appellant; in response, on 28 October 2011 he offered to voluntarily resign from the Air Force.  On 24 February 2012, the Secretary of the Air Force approved the appellant's discharge with a service characterization of under other than honorable conditions.

Before his administrative separation was completed, and unbeknownst to his commander, the appellant entered into an employment contract with a hospital in Lawrenceburg, Tennessee.  On 6 March 2012, a charge was preferred against the appellant for willfully disobeying a superior commissioned officer's order not to touch patients.  The same day, the appellant requested from his commander 60 days of terminal leave to help his wife and two children who had already moved to Tennessee.  His commander denied this request, but authorized regular and advance leave to Tennessee from 7-21 March 2012, with the expectation that the appellant would be present for duty at Eglin AFB at 0730 the morning of 22 March 2012.  The appellant began seeing patients at the Tennessee hospital on 7 March 2012, and committed himself to seeing

---

[1] The Court-Martial Order (CMO) incorrectly identifies the Third Additional Charge as a violation of Article 86, UMCJ, 10 U.S.C. § 886, where it should reflect a violation of Article 92, UCMJ, 10 U.S.C. § 892.  We order promulgation of a corrected CMO.  *See* Air Force Instruction 51-201, *Administration of Military Justice*, ¶ 10.10 (6 June 2013).
[2] The appellant was acquitted of one specification of dereliction of duty alleging a violation of Article 92, UCMJ, and one specification of malingering in violation of Article 115, 10 U.S.C. § 915.  A third specification of disobeying a superior commissioned officer was dismissed by the military judge pursuant to Rule for Courts-Martial (R.C.M.) 917.

patients through 27 March 2012 and being on call through the end of the month, even though he was still on active duty with no separation date.

On 22 March 2012, at 0046, the appellant emailed his commander Colonel (Col) RS and stated: "Before I could return last night I slipped on a flight of stairs and lacerated my left knee. I was treated in the local ER with some sutures, and they are concerned that I have a patellar tendon laceration. . . . They advised no travel until next week." The appellant next reported for duty on 28 March 2012, the date of his Article 32, UMCJ, 10 U.S.C. § 832, investigation.

Additional facts relevant to the disposition of the assigned errors are below.

*Findings by Exceptions and Substitutions*

The appellant argues the exceptions and substitutions to the malingering specification amounted to a fatal variance requiring dismissal of the charge. We conclude that the change constituted a material variance, which materially prejudiced the appellant. We, therefore, reassess the sentence below.

On 18 June 2012, the appellant was arraigned on multiple charges. Specification 1 of the Fourth Additional Charge alleged a violation of Article 115, UCMJ. The Specification alleged the appellant:

> [D]id, at or near Franklin, Tennessee, on or about 21 March 2012, for the purpose of avoiding his duty at Eglin Air Force Base, feign physical disablement or intentionally injure himself by lacerating his left knee.

The appellant pled not guilty to all charges and specifications. A month later, at the outset of the appellant's trial, the Government announced it was deleting the words "feign physical disablement or" from Specification 1 of Additional Charge IV.

During the Government's case-in-chief, trial defense counsel, when cross-examining the medical witnesses who treated the appellant's knee injury, focused largely on the cause of the injury as reported by the appellant and how the subject of a "doctor's note" to limit travel came up during treatment. When three Government witnesses recalled the appellant attributing the knee injury to falling on some steps while leaving work, trial defense counsel did not challenge this testimony. But when an emergency room technician testified the appellant told him he cut his knee on some bricks in his backyard, trial defense counsel challenged this recollection. Trial defense counsel additionally expanded upon one Government witness's testimony that she had once fallen on the same brick steps at the appellant's workplace and had also injured her leg.

During closing argument, trial counsel argued the appellant intentionally injured himself to avoid returning to Eglin AFB. Trial defense counsel, by contrast, suggested the injury was accidental.

During their deliberations, the members submitted several questions to the court, including a two-part question:

(1) Is there a definition of malingering that includes exaggerating facts to avoid duty?

(2) If so, can specification 1 of Additional Charge IV be amended to reflect this aspect of malingering?

To answer the first part of the question, both counsel agreed with the military judge's proposal of reading the "nature of offense" explanation of Article 115, UCMJ, from the *Manual for Courts-Martial*. That explanation provides:

The essence of this offense is the design to avoid performance of any work, duty, or service which may properly or normally be expected of one in the military service. Whether to avoid all duty, or only a particular job, it is the purpose to shirk which characterizes the offense. Hence, the nature or permanency of a self-inflicted injury is not material on the question of guilt, nor is the seriousness of a physical or mental disability which is a sham. Evidence of the extent of the self-inflicted injury or feigned disability may, however, be relevant as a factor indicating the presence or absence of the purpose.

*Manual for Courts-Martial, United States* (*MCM*), Part IV, ¶ 40.c.(1) (2008 ed.).

With respect to the second question, however, trial defense counsel objected to the conclusion that the members could find the appellant guilty of malingering by exaggerating an injury. Trial defense counsel argued the two different theories of malingering result in two different offenses that have potentially separate defenses. The military judge overruled the objection and answered the members' second question in the affirmative.

Thereafter, the members excepted from Specification 1 of Fourth Additional Charge the words "intentionally injured himself by lacerating his left knee," substituting the words, "feign disability by exaggerating the extent of the injury to his left knee." After the members' findings were announced, trial defense counsel successfully moved to

dismiss a separate charge on the basis of a fatal variance.[3]  However, no objection was made to the members' variance on the malingering specification.  In a brief and somewhat convoluted exchange, the military judge questioned trial defense counsel regarding the malingering specification as announced by the members.  Trial defense counsel conceded the members had "substituted in what is clearly an offense" and did not raise any objection to the members' findings.

Although trial defense counsel made an initial objection to the instruction, he appeared to have no objection after the members returned with the findings by exceptions and substitutions.  Because the trial defense counsel did not object to the exceptions and substitutions at trial, we review for plain error.  *United States v. Finch*, 64 M.J. 118, 121 (C.A.A.F. 2006).  The elements of the "plain error test [are]:  (1) that there was an error; (2) that the error was plain, that is clear, or, equivalently, obvious; and (3) the plain error affected substantial rights."  *Id.* (citing *United States v. Powell*, 49 M.J. 460, 463 (C.A.A.F. 1998)).

The Rules for Courts-Martial (R.C.M.) authorize findings by exceptions and substitutions, but such findings "may not be used to substantially change the nature of the offense or to increase the seriousness of the offense or the maximum punishment for it."  R.C.M. 918(a)(1).  "Minor variances that do not change the nature of the offense are not necessarily fatal."  *United States v. Lovett*, 59 M.J. 230, 235 (C.A.A.F. 2004) (citing *United States v. Hunt*, 37 M.J. 344, 347-48 (C.M.A. 1993); *United States v. Willis*, 50 M.J. 841 (A.F. Ct. Crim. App. 1999)).  "Where, however, an appellant can demonstrate that a variance is material and that he or she was prejudiced, the variance is fatal and the findings thereon cannot stand."  *United States v. Teffeau*, 58 M.J. 62, 66 (C.A.A.F. 2003).  A variance is material if, for instance, it "substantially changes the nature of the offense, increases the seriousness of the offense, or increases the punishment of the offense."  *Finch*, 64 M.J. at 121 (citing *Teffeau*, 58 M.J. at 66; R.C.M. 918(a)(1)).

In *Lovett*, our superior court found a fatal variance when the court members, by exceptions and substitutions, found the appellant guilty of a "general disorder" offense, under Article 134, UCMJ, 10 U.S.C. § 934. The appellant had been charged with wrongfully soliciting, under Article 134, UCMJ, the murder of his wife in violation of Article 118, UCMJ, 10 U.S.C. § 918, to prevent her from testifying against him. 59 M.J. at 236.  Observing the particular language of the charge implied the specific intent of premeditation, our superior court found the appellant's defense team accordingly "channeled its efforts in the direction of solicitation of premeditated murder" and the appellant "could not have anticipated conviction for a lesser-included offense of

---

[3] Under R.C.M. 917, the military judge dismissed the Specification of the Charge, which alleged a violation of Article 90, UCMJ, 10 U.S.C. § 890, disobeying a superior commissioned officer, after the members excepted the identity of the superior commissioned officer named in the specification and substituted that of another.

soliciting a person to wrongfully prevent [his wife] from appearing in a judicial proceeding." *Id.*

The appellant argues the finding by exceptions and substitutions resulted in him being convicted of "a different offense, involving a different theory than that described in the specification upon which [the appellant] was arraigned."[4] The Government contends the variance is minor, did not substantially alter the nature of the offense of malingering, and, even if material, did not prejudice the appellant. The Government also points out that the offense of which the appellant was convicted – malingering by feigning disability – is a less serious form of malingering than malingering by self-injury.

We conclude that while the essence of the malingering offense in the present case remained the same, that is, the "the design to avoid performance of any work, duty, or service . . . the purpose to shirk," *MCM*, Part IV, ¶ 40.c.(1), the variance in findings was material because it "changed the identity of the offense against which the accused had to defend." *United States v. Marshall*, 67 M.J. 418, 421 (C.A.A.F. 2009). The statutory language of Article 115, UCMJ, provides for two distinct forms of malingering: feigning illness or injury, or intentionally inflicting self-injury.

As previously noted, prior to arraignment but before the members were called, the Government modified the malingering specification by limiting it to only the offense of intentional self-injury. Accordingly, the defense channeled its efforts at trial in the direction of rebutting that variation of the charge. While trial counsel, to prove intentional self-injury, emphasized inconsistencies in how the appellant reported his injury and the appellant's motives to injure himself, trial defense counsel argued the lack of evidence supporting intentional injury. Trial defense counsel drew attention to the height and appearance of the brick steps at the appellant's workplace, the injury not resembling a clean scalpel wound, and, coincidentally, that one of the Government's witnesses had also fallen on brick stairs at the appellant's workplace. Moreover, consistent with the Government's 11th-hour modification, the military judge instructed the members the elements of the offense included "that on or about 21 March 2012, at or near Franklin, Tennessee, the accused intentionally injured himself by lacerating his left knee" and did not include any element of feigning injury.

The appellant's conviction of malingering by feigning disability was a conviction of a crime different from the specification that he was expected to defend himself against before the members. The excepted and substituted finding did not increase the seriousness of the offense and did not increase the maximum punishment.[5] However, we

---

[4] We note the appellant was arraigned at a separate proceeding, a month before trial began, at which point Specification 1 of the Fourth Additional Charge included the language regarding feigning physical disablement. The Specification was modified at the outset of the appellant's trial before the introduction of evidence.

[5] The maximum punishment for malingering by self-inflicted injury includes 5 years of confinement while the maximum for malingering by feigning a physical disability includes only 1 year of confinement.

agree with trial defense counsel's initial concerns that the two theories of malingering are substantially different. We find a qualitative difference between an allegation that an appellant intentionally inflicted an injury upon himself and an allegation that the injury is a sham. The elements of intentional infliction of self-harm and feigning a disability are different. When the Government chose to withdraw the element of feigning a disability before trial, it removed the notice that the appellant needed to defend himself against this other separate element. We conclude the findings by exception and substitutions constituted a material variance.

"Even where there is a variance in fact, the critical question is one of prejudice." *United States v. Lee*, 1 M.J. 15, 16 (C.M.A. 1975) (citing *United States v. Craig*, 24 C.M.R. 28 (C.M.A. 1957); *United States v. Hopf*, 5 C.M.R. 12 (C.M.A. 1952)). Prejudice from a material variance can arise by "(1) putting '[the appellant] at risk of another prosecution for the same conduct,' (2) misleading him 'to the extent that he has been unable adequately to prepare for trial,' or (3) denying him 'the opportunity to defend against the charge.'" *Marshall*, 67 M.J. at 420 (quoting *Teffeau*, 58 M.J. at 67). We examine each of the prejudice prongs in turn.

First, there is no risk the appellant will be prosecuted again for the same offense. The double jeopardy protection has attached to the offense of malingering by self-injury. *See* Article 44(c), UCMJ, 10 U.S.C. § 844(c); *United States v. Easton*, 71 M.J. 168, 170 (C.A.A.F. 2012). Second, the appellant was able to adequately prepare for trial on the offense of malingering by feigning. The malingering by feigning language was included in the preferral, subject to the Article 32, UCMJ, investigation, referral and arraignment. The appellant was therefore on notice *prior to trial* that he needed to prepare and defend against the allegation of malingering by feigning. On the third prong of prejudice, the record reveals trial defense counsel directed his cross-examination and argument at attacking the Government's theory of malingering by intentional self-injury, rather than malingering by feigning disability. Because the Government chose to withdraw the feigning language before the presentation of evidence, the appellant was not on notice *during the court-martial* that he needed to present a defense to this distinctly different charge, either by presenting his own evidence or challenging the Government's presentation of evidence of this now uncharged theory. An examination of recent case law on the due process requirement of notice informs our decision on whether the appellant suffered prejudice under this third prong.

"[A]n accused cannot be convicted of a crime different from that charged." *United States v. Wray*, 17 M.J. 375 (C.M.A. 1984). Fair notice requires that an appellant has the "right to know what offense and *under what legal theory* he will be convicted." *United States v. Tunstall*, 72 M.J. 191, 196 (C.A.A.F. 2013) (emphasis in original) (citation and internal quotation marks omitted). An appellant's constitutional right to notice is jeopardized when the Government is allowed to request an instruction on elements that are not charged. *Schmuck v. United States*, 489 U.S. 705, 718 (1989);

*United States v. Fosler*, 70 M.J. 225 (C.A.A.F. 2011). Although the instruction in this case was in response to a question by the members, there is no doubt the Government concurred in the military judge's proposed instruction and benefitted from this alternative legal theory.

In *Tunstall*, the military judge erroneously instructed the members that indecent acts was a lesser-included offense of aggravated sexual assault on a person who was substantially incapacitated. As part of the instructions concerning indecent acts, the military judge instructed that "open and notorious" sexual behavior can be considered indecent. *Tunstall*, 72 M.J. at 195. Our superior court determined that because the appellant was neither charged with nor on notice of the new theory until the military judge's instructions, "he was not on fair notice to defend against that offense and his due process rights were violated." *Id.* at 196. Similarly in this case, the Government made a deliberate decision to withdraw the language of feigning disability before the presentation of evidence. The appellant was no longer charged with this different theory and was no longer on notice that he needed to defend against it until the military judge's instructions. We similarly conclude the appellant in this case was prejudiced as he was denied the opportunity to defend against the withdrawn theory of malingering by feigning. Therefore, we set aside and dismiss the Fourth Additional Charge and its remaining specification.

*Legal and Factual Sufficiency*

The appellant contends the evidence is legally and factually insufficient to support a finding of guilty to Additional Charge I, alleging AWOL, because the appellant was "unable to return to duty at the expiration of his leave due to an injury" as a result of his medical discharge instructions. Prior to leaving the emergency room the night of his treatment, the appellant asked for a "work note," and the treating physician's assistant provided a note precluding travel for five days. The appellant argues that because he was found not guilty of intentionally injuring himself, he was therefore "not at fault" for his injury and its subsequent limitations. We disagree.

We may affirm only those findings of guilty that we determine are correct in law and fact and, on the basis of the entire record, should be approved. Article 66(c), UCMJ, 10 U.S.C. § 866(c). The test for legal sufficiency is whether, when the evidence is viewed in the light most favorable to the Government, a rational factfinder could have found the appellant guilty of all the elements of the offense beyond a reasonable doubt. *United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Turner*, 25 M.J. 324 (C.M.A. 1987)). The test for factual sufficiency is whether, "after weighing the evidence and making allowances for not having personally observed the witnesses," we are convinced of the appellant's guilt beyond a reasonable doubt. *Reed*, 54 M.J. at 41 (citing *Turner*, 25 M.J.at 325 ).

ACM 38227

In support of his argument, the appellant cites to the discussion of Article 86, UCMJ, in the *Manual*, which provides:

> *Inability to return*. The status of absence without leave is not changed by an inability to return through sickness, lack of transportation facilities, or other disabilities. But the fact that all or part of a period of unauthorized absence was in a sense enforced or involuntary is a factor in extenuation and should be given due weight when considering the initial disposition of the offense. When, however, a person on authorized leave, without fault, is unable to return at the expiration thereof, that person has not committed the offense of absence without leave.

*MCM*, Part IV, ¶ 10.c.(6).

Discussing a related provision in the 1969 *Manual*, our superior court observed the defense of impossibility in AWOL cases has been strictly construed "to include only those cases in which the absence truly was, as a practical matter, for a reason which was out of the accused's hands." *United States v. Lee*, 16 M.J. 278, 280 (C.M.A. 1983). Moreover, "[e]ven when the defense might have been available initially, it can be defeated by a showing that the accused exerted insufficient effort to overcome the disability." *Id.* at 281. Our superior court noted, for example, the defense of impossibility was not available to an accused whose car broke down while he was returning from a weekend pass, who elected to stay with the car until it was repaired, because the decision to stay with the car was made for his own convenience. *Id.* (citing *United States v. Kessinger*, 9 C.M.R. 261, 268 (A.B.R. 1952)).

Here, the appellant's assertion he was unable to return to duty is belied by testimony of the medical personnel who treated the appellant, the appellant's demonstrated ability to commute to work at the civilian hospital, and his ability to see patients despite his injury. Despite the travel annotation on the appellant's medical record, the appellant was discharged without a brace or crutches, continued to commute one hour and fifteen minutes to and from work, and continued to see patients at his civilian practice. Additionally, after sending a misleading email to his commander, the appellant remained absent from his unit without making any further attempts to contact his commander. Viewing the evidence in the light most favorable to the Government, we are convinced a rationale factfinder could find beyond a reasonable doubt the appellant was guilty of absence without leave and find beyond a reasonable doubt the defense of inability to return did not apply. Upon our own review of the evidence in the record of trial, we are convinced of the appellant's guilt beyond a reasonable doubt.

*Sentencing Argument*

The appellant's next assignment of error alleges trial counsel made improper statements during sentencing argument. Specifically, the appellant takes issue with three aspects of the argument: (1) Trial counsel's reference to the appellant's nonjudicial punishment and administrative paperwork in support of a dismissal; (2) His reference to the appellant's occupation as a doctor within the military; and (3) His asking the members to send a message to other doctors that misconduct such as the appellant's would "hurt bad." We disagree that these remarks constituted improper argument.

Whether argument is improper is a question of law we review de novo. *United States v. Marsh*, 70 M.J. 101, 104 (C.A.A.F. 2011) (citing *United States v. Pope*, 69 M.J. 328, 334 (C.A.A.F. 2011)). If trial defense counsel failed to object to the argument at trial, we review for plain error. *Id.* To establish plain error, the appellant must prove: "(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right." *Id.* (citation and quotation marks omitted). "'[T]rial counsel is at liberty to strike hard, but not foul, blows.'" *United States v. Schroder*, 65 M.J. 49, 58 (C.A.A.F. 2007) (quoting *United States v. Baer*, 53 M.J. 235, 237 (C.A.A.F. 2000)). Accordingly, trial counsel may not "unduly . . . inflame the passions or prejudices of the court members," *United States v. Clifton*, 15 M.J. 26, 30 (C.M.A. 1983); inject irrelevant matters, such as personal opinions or facts not in evidence, *United States v. Fletcher*, 62 M.J. 175, 180, 183 (C.A.A.F. 2005); invite punishment for uncharged misconduct, *Schroder*, 65 M.J. at 58; comment upon the accused's exercise of his or her constitutionally protected rights, *United States v. Paxton*, 64 M.J. 484, 487 (C.A.A.F. 2007); or treat an accused's duty position as a matter in aggravation absent a connection between the member's position and the offense, *United States v. Bobby*, 61 M.J. 750, 756 (A.F. Ct. Crim. App. 2005). Stated conversely, trial counsel is limited to arguing the evidence in the record and the inferences fairly derived from that evidence. *See Paxton*, 64 M.J. at 488; *United States v. White*, 36 M.J. 306, 308 (C.M.A. 1993).

In this case, the arguments of trial counsel were well within the evidence in the record, fairly derived from that evidence, and did not ask the members to punish the appellant for uncharged misconduct or treat his duty position as a doctor as a matter in aggravation. While trial counsel made reference to the appellant's prior nonjudicial punishment and administrative actions, he also tied them to the appellant's lack of rehabilitative potential and lack of response to lesser forms of punishment. As trial counsel summed up in his argument, the Air Force did "everything that [it could] . . . to try to deter [the appellant] and to try to punish him and may be [sic] he's demonstrated that he's just not deterrable." Trial counsel's arguments regarding the appellant's position as an officer and a doctor, calling both positions "truly honorable" and arguing they are critical to the Air Force's ability "to fight our wars and to continue our missions"

did not comment on a fact unrelated to the appellant's crimes. Rather, this commentary was fairly derived from the specifications of which he had been found guilty.

Finally, the appellant's contention that trial counsel's argument for general deterrence permeated the entire sentencing argument is without merit. Trial counsel argued, among other things, that the members should "send a message to other doctors, to other professionals, two [sic] other officers in the military that if this is how you conduct yourself . . . it's going to hurt, it's going to hurt bad." General deterrence is an appropriate consideration for sentencing, provided it is not relied upon to the exclusion of other factors. *United States v. Lania*, 9 M.J. 100, 104 (C.M.A. 1980). Here, trial counsel's argument for general deterrence was but one of several sentencing factors addressed.

*Post-trial Processing*

The appellant's court-martial concluded on 19 July 2012 and the convening authority took action 123 days later on 19 November 2012. The appellant argues that under *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006), this violated his right to speedy appellate review. We disagree.

We review de novo whether an appellant has been denied the due process right to speedy post-trial review and whether any constitutional error is harmless beyond a reasonable doubt. *United States v. Allison*, 63 M.J. 365, 370 (C.A.A.F. 2006). The overall delay of more than 120 days between adjournment and action is presumptively unreasonable and triggers an analysis of the four factors elucidated in *Barker v. Wingo*, 407 U.S. 514 (1972), adopted in *Moreno*, 63 M.J. at 135. Those factors are "(1) the length of the delay; (2) the reasons for the delay; (3) whether the appellant made a demand for a speedy trial; and (4) prejudice to the appellant." *Barker*, 407 U.S. at 53; *United States v. Mizgala*, 61 M.J. 122, 129 (C.A.A.F. 2005).

The first factor weighs in favor of the appellant; the length of the delay is presumptively unreasonable and therefore satisfies the first *Barker* factor. *Moreno*, 63 M.J. at 142. The second factor weighs minimally in favor of the appellant. Approximately one week of the delay was attributable to the court reporter being ill and to disruptions caused by a hurricane. However, we are mindful of our superior court's emphasis that the 120-day period after the conclusion of trial is not a "free" period, and "personnel and administrative issues . . . are not legitimate reasons justifying otherwise unreasonable post-trial delay." *United States v. Arriaga*, 70 M.J. 51, 57 (C.A.A.F. 2011). Third, although the Government carries the burden of primary responsibility for speedy post-trial processing, *United States v. Bodkins*, 60 M.J. 322, 323-24 (C.A.A.F. 2004), the appellant did not assert his right to speedy post-trial processing until now on appeal, never asserting this right during the time of this initial delay. Finally, on the fourth factor, the appellant fails to articulate any prejudice in this case, other than a concern his

confinement might have been oppressive upon a successful appeal. "An appellant must demonstrate a 'particularized anxiety or concern that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision.'" *Arriaga*, 70 M.J. at 58 (quoting *Moreno*, 63 M.J. at 140). Here, the appellant has not done so. Moreover, based on our reassessment below, the appellant has not suffered any additional confinement time as a result of the delay in appellate review.

When there is no showing of prejudice under the fourth factor, "we will find a due process violation only when, in balancing the other three factors, the delay is so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 361-62 (C.A.A.F. 2006). Having considered the totality of the circumstances and the entire record, when we balance the other three factors, we find the post-trial delay in this case to not be so egregious as to adversely affect the public's perception of fairness and integrity of the military justice system. We are convinced the error is harmless beyond a reasonable doubt.

While we find the post-trial delay was harmless, that does not end our analysis. Article 66(c), UCMJ, empowers appellate courts to grant sentence relief for excessive post-trial delay without the showing of actual prejudice required by Article 59(a), UCMJ, 10 U.S.C. § 859(a). *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002); *see also United States v. Harvey*, 64 M.J. 13, 24 (C.A.A.F. 2006). In *United States v. Brown*, 62 M.J. 602, 606-07 (N.M. Ct. Crim. App. 2005), our Navy and Marine Court colleagues identified a "non-exhaustive" list of factors to consider in evaluating whether Article 66(c), UCMJ, relief should be granted for post-trial delay. Among the non-prejudicial factors are the length and reasons for the delay; the length and complexity of the record; the offenses involved; and the evidence of bad faith or gross negligence in the post-trial process. *Id.* at 607. Here, the transcript was 869 pages and contained 30 prosecution exhibits, 8 defense exhibits, and 42 appellate exhibits. Although the record of trial was not onerous, we nevertheless find there was no bad faith or gross negligence in the post-trial processing and the length of delay was minimal. We conclude that sentence relief under Article 66, UCMJ, is not warranted.

*Sentence Reassessment*

This Court has "broad discretion" when reassessing sentences. *United States v. Winckelmann*, 73 M.J. 11, 12 (C.A.A.F. 2013). Our superior court has repeatedly held that if we "can determine to [our] satisfaction that, absent any error, the sentence adjudged would have been of at least a certain severity, then a sentence of that severity or less will be free of the prejudicial effects of error." *United States v. Sales*, 22 M.J. 305, 308 (C.A.A.F. 1986). This analysis is based on a totality of the circumstances with the following as illustrative factors: dramatic changes in the penalty landscape and exposure, the forum, whether the remaining offenses capture the gravamen of the criminal conduct,

whether significant or aggravating circumstances remain admissible and relevant, and whether the remaining offenses are the type that we as appellate judges have experience and familiarity with to reliably determine what sentence would have been imposed at trial. *Winckelmann*, 73 M.J. at 15-16.

In this case the landscape penalty has not changed dramatically. The military judge instructed the members the appellant faced a maximum sentence of a dismissal, 8 years and 6 months of confinement, a fine, and forfeiture of all pay and allowances. The set aside of the malingering by feigning charge reduced the maximum confinement by 1 year. Trial counsel argued for a dismissal, a fine of $50,000, and 6 months of confinement. The evidence of the feigned injury would still be relevant and admissible as evidence regarding the AWOL charge as addressed above. The remaining offenses are the type of offenses with which we have experience and familiarity in determining sentence appropriateness. The members sentenced the appellant to a dismissal and 2 years of confinement. The convening authority granted clemency and approved only the dismissal and 1 year of confinement. Based on the totality of the circumstances in this court-martial, we are satisfied that absent the error the members would have adjudged no less than the approved sentence of a dismissal and 1 year of confinement.

*Conclusion*

Specification 1 of Fourth Additional Charge is dismissed. The remaining findings and sentence, as reassessed, are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ; *Reed*, 54 M.J. at 41. Accordingly, the remaining findings and sentence, as reassessed, are

AFFIRMED.

FOR THE COURT

STEVEN LUCAS
Clerk of the Court