**UNITED STATES**

**v.**

**Lawrence BROWN, Private (E–1), U.S. Marine Corps.**

**NMCCA 200500873.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 19 Dec. 2002.

Decided 30 Nov. 2005.

LtCol John Hogan, USMCR, Appellate Defense Counsel.

Lt Anthony S. Yim, JAGC, USNR, Appellate Defense Counsel.

Capt Roger Mattioli, USMC, Appellate Government Counsel.

Before the Court En Banc.

WAGNER, Senior Judge:

Contrary to his pleas, the appellant was convicted by a military judge sitting as a special court-martial, of unauthorized absence, disrespect, and failure to obey a lawful order, in violation of Articles 86, 91, and 92, Uniform Code of Military Justice, 10 U.S.C. §§ 886, 891, and 892. The military judge sentenced the appellant to a bad-conduct discharge and confinement for 57 days. There

was no pretrial agreement. The convening authority approved the sentence as adjudged.

In his first assignment of error, the appellant claims that the court-martial promulgating order (CMO) incorrectly reflects his pleas to Charges I and II. In his second assignment of error, the appellant claims that he suffered material prejudice by unreasonable delay in the post-trial processing of his case.

After considering the record of trial, the appellant's assignments of error, and the Government's response, we agree with the appellant as to the first allegation of error. Although we disagree with the material prejudice aspect of the second allegation of error, we agree that the post-trial processing of this case warrants relief. We will take and order corrective action in our decretal paragraph. Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

## Background

The appellant originally entered pleas of guilty to Charges I and II and their sole specifications and a not guilty plea to Charge III and its sole specification. The military judge rejected the appellant's plea to Charge II and the appellant subsequently withdrew his pleas and entered not guilty pleas to all charges. Following the presentation of evidence on the merits, the military judge found the appellant guilty of all charges and specifications. The court-martial adjourned on 19 December 2002.[1]

Trial defense counsel completed examination of the 96–page record of trial on 9 May 2003 and the trial counsel completed his review on 13 May 2003, almost five months after trial. The military judge authenticated the record on 30 July 2003. The record of trial routing sheet indicates that the record was sent to the Review Section on 2 December 2003. The staff judge advocate's (SJA) affidavit states that there was no review officer between August 2003 and November 2004, a 15–month period of time. The SJA further suggests that for an unknown period of time in 2003 the review chief was not competent and was later transferred to other duties. The SJA also states that there were problems getting the long-form appellate rights statement and the special power of attorney for appellate representation from the trial defense counsel.

The staff judge advocate's recommendation (SJAR) was not completed until 1 April 2005, almost 28 months after trial. The convening authority's action was completed on 16 May 2005 and the record was docketed with this court on 9 June 2005.

## CMO Error

We agree that the CMO incorrectly states that the appellant pled guilty to Charges I and II and their sole supporting specifications. In fact, he pled not guilty to all charges and specifications. We find no prejudice to the appellant as a result of these scrivener's errors, but he is entitled to accurate official records concerning his court-martial. *United States v. Crumpley*, 49 M.J. 538, 539 (N.M.Ct.Crim.App.1998). We will direct corrective action in our decretal paragraph.

## Post–Trial Delay as a Due Process Violation

■ We look to four factors in determining if post-trial processing delay has violated the appellant's due process rights: (1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to a timely appeal; and (4) prejudice to the appellant. *United States v. Jones*, 61 M.J. 80, 83 (C.A.A.F.2005)(citing *Toohey v. United States*, 60 M.J. 100, 102 (C.A.A.F. 2004)). If the length of the delay itself is not unreasonable, there is no need for further inquiry. If, however, we conclude that the length of the delay is "facially unreasonable," we must balance the length of the delay with the other three factors. *Id.* Moreover, in extreme cases, the delay itself may "give rise to a strong presumption of evidentiary prejudice . . . ." *Id.* (quoting *Toohey*, 60 M.J. at 102).

### (1) Length of Delay

■ The trial counsel did not complete his review of the record until nearly 5

---

1. We note that the record of trial incorrectly uses the year 2003 vice 2002 throughout the 19 December session of trial transcript. There is no dispute, however, that the actual date of trial was 19 December 2002.

months after trial. The SJAR was not completed for over 2 years following trial. The 96–page record of trial was docketed at this court nearly 30 months after trial. Without considering the size and complexity of the record of trial or any other factors, this court finds that a delay in excess of one year from the adjournment of trial to docketing at this court is facially unreasonable. The processing of this record was dilatory and is, on its face, unreasonable, triggering a due process review and consideration of the effect, if any, that the delay has upon the findings and sentence that should be approved under Article 66(c), UCMJ.

### (2) Reasons for the Delay

The Government asserts through an affidavit [2] from the SJA that it encountered problems in obtaining documents relating to post-trial appellate rights and representation from the trial defense counsel. It also cites problems with substitute defense counsel's cooperation and availability during the post-trial review process. We view these issues as within the administrative control of the Government and, absent specific instances of the appellant or his counsel interfering with the post-trial review process, we give them little weight.

■ The Government also asserts that the Review Section had no review officer between August 2003 and November 2004 and implies that there were competence problems with the review chief in 2003. This part of the explanation provided for the delay signals severe systemic neglect of the post-trial review process and a lack of concern for these vital military justice duties. Under the circumstances of this case, the Government's proffered reasons for the delay do not make the delay any more reasonable than it appears on its face. We further note that there is absolutely no proscription against the SJA drafting the SJAR. As we said in *United States v. Kersh*, 34 M.J. 913, 914 n. 2

(N.M.C.M.R.1992) the SJA is responsible for the work product of his or her office.

### (3) Assertion of the Right to Speedy Review

There is no evidence in the record that the appellant asserted his right to a timely appeal prior to the filing of the appellant's brief and assignment of errors on 29 July 2005.

### (4) Prejudice to the Appellant

■ We do not find any specific evidence of prejudice suffered by the appellant from the delay in this case. Additionally, the delay in this case is not so egregious as to give rise to a presumption of prejudice. Thus, we conclude that there has been no due process violation due to the post-trial delay.

### Post–Trial Delay Under Article 66(c), UCMJ

■ We are cognizant of this court's power under Article 66(c), UCMJ, to grant sentence relief for excessive post-trial delay even in the absence of actual prejudice. *United States v. Oestmann*, 61 M.J. 103, 104 (C.A.A.F.2005); *Toohey*, 60 M.J. at 102; *Diaz v. Judge Advocate General of the Navy*, 59 M.J. 34, 37 (C.A.A.F.2003); *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F.2002). We are challenged under Article 66, UCMJ, to affirm only the findings and the sentence or part of the sentence that we find "correct in law and fact" and that we "determine[ ], on the basis of the entire record, should be approved."

The Department of the Navy typically convenes in excess of 2,000 special and general courts-martial each year, most of which are entitled to review under Article 66, UCMJ. This court cannot help noting the flood of records of trial that have been docketed long after their trial dates. Post-trial delay has become a systemic problem for many Navy and Marine Corps convening authorities and SJAs. In many cases, we are left without explanation for the delay. In cases such as

---

2. Affidavits submitted in cases that only provide generalized rationale for why cases from a specific convening authority or SJA office are delayed are not given great weight. When considering the Government's reasons for delay, we determine whether the post-trial processing in an individual case was impacted by the circumstances provided. Such submissions should be specific to the case at bar.

the one at bar, we are left with an explanation that all but concedes indifference or gross neglect of the post-trial review process. In such cases, we are faced with the Hobson's choice of tolerating the intolerable by terming the delay unreasonable but awarding no relief, or accepting the unacceptable by awarding a windfall to the appellant at the expense of the Government's interest in a just punishment for the offender. In any case, it is simply unacceptable for any convening authority to amply sow the fertile fields of courts-martial referral without preparing for a timely harvest of the resulting records of trial.

Moreover, the SJA review process is not designed to be a slow and cumbersome process. To the contrary, in 1984 the process was reconfigured to provide for speedy review. RULE FOR COURTS-MARTIAL 1106(c), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1984 and subsequent editions) requires that the SJA or legal officer *use* the record of trial in preparing the SJAR, but does not require a detailed reading of the entire verbatim record of trial. The SJAR is to be a *concise* communication, which is only required to state the findings and sentence of the court-martial; state the sentencing authority's clemency recommendation, if any; summarize the accused's service record, including length and character of service, awards and decorations, and prior disciplinary history; state the nature and duration of pretrial restraint, if any; and, if there is a pretrial agreement, state the convening authority's obligation under the agreement or why there is no such obligation. R.C.M. 1106(d).

The SJAR must include a recommendation as to the action to be taken by the convening authority and must address only those legal errors raised by the accused in matters submitted under R.C.M. 1106. *Id.* No analysis or rationale for the SJA's statement regarding legal errors is required. *Id.* Finally, the SJA has the discretion to address other legal errors or additional matters he or she deems appropriate. *Id.* In most cases, a recommendation that satisfies all legal requirements under R.C.M. 1106 need be no longer than two pages.

This streamlined process is further amplified in R.C.M. 1107(b)(3), which requires that the convening authority, in taking action on the record, must consider the results of trial, the SJAR, and any matters submitted by the accused under R.C.M. 1105 or 1106(f). The convening authority *may* consider the record of trial, personnel records of the accused, or such other matters that he or she deems appropriate (with notice to the accused). R.C.M. 1107(b)(3)(B). Neither the SJA nor the convening authority is required to review the entire record of trial.

We should also comment on the trial counsel's duty under R.C.M. 1103 to examine the record of trial and to make necessary changes to ensure that the proceedings were recorded accurately. This should be done as soon as possible following trial, not only to advance the post-trial process, but also because the trial counsel's memory of the proceedings is still fresh.

In the absence of statutory or regulatory rules specific to the speedy review of courts-martial, and considering the historical ineffectiveness of administrative processing goals established for Navy courts-martial,[3] the court strongly recommends that the Joint Service Committee on Military Justice promptly forward a draft Rule for Courts-Martial on speedy post-trial review to the President for his consideration. If the Joint Service Committee fails to do so, we recommend that the Judge Advocate General promulgate a change to the Manual of the Judge Advocate General addressing this issue. Draft provisions are contained in Appendices I and II to this decision.

█ Until such time as the President or the Judge Advocate General promulgates a rule, we will consider the following non-exhaustive factors under Article 66(c), UCMJ, in determining whether and what part of the findings and sentence should be approved in a case involving post-trial delay: [4]

---

**3.** Chief of Naval Operations Instruction 5810.4/ Judge Advocate General Instruction 5810.1, *Management Goals for Processing Navy Courts-Martial,* (5 Sep 1984).

**4.** In publishing a non-exhaustive list of factors to

(1) length of the delay, noting the court's finding that, without considering the size and complexity of the record of trial or any other factors, a delay in excess of one year from the adjournment of trial to docketing at this court is facially unreasonable;

(2) the reason(s) for the delay; [5]

(3) the length and complexity of the record of trial and the number and complexity of potential appellate issues;

(4) any evidence of bad faith or gross negligence on the part of the Government in the post-trial review process;

(5) whether the appellant has asserted the right to speedy review;

(6) whether the appellant has made any showing of harm resulting from the delay; and

(7) the offense(s) of which the appellant was found guilty and the sentence.

[8] The due process right to a speedy review is separate and distinct from the consideration of post-trial delay as a factor for our analysis under Article 66(c), UCMJ. Once the court has applied the due process analysis set forth in *Jones,* 61 M.J. at 83, and found no violation of the appellant's due process right to a speedy review, the issue of speedy review as a distinct constitutional right is settled. If the court determines there has been a violation of that right, the court must apply a remedy. If the court finds no violation of the right to speedy review, we still must consider the delay, not as an individual due process right, but as simply one factor in our broad mandate under Article 66(c). *See Tardif,* 57 M.J. at 224.

The factors we publish today, although they have not been articulated in a previous decision by this court, are those factors that we have found ourselves considering in determining what findings and sentence should

be approved under Article 66(c), UCMJ, in cases involving post-trial delay. By publishing the factors we use to meet our mandate under Article 66(c), UCMJ, we shed light on the issue for the benefit of trial and appellate counsel, military judges, staff judge advocates, and appellants. We do not view these factors as equitable in nature.

The dissent reaches beyond the four corners of this record of trial by adding as a reason for the delay and as a factor impacting on the seriousness of the offenses the fact that, at the time of the appellant's court-martial, United States armed forces were otherwise busy with ongoing operations in Afghanistan and preparing for operations in Iraq. The staff judge advocate, in a far better position than this court to assess the impact of mobilization and deployment on the post-trial processing of this record of trial, did not provide this as a reason for the delay in her post-trial affidavit. We decline to assume facts not established in the record.

▮ In the present case, we have a facially unreasonable delay of almost 30 months from adjournment of the court-martial to docketing of the record with this court. The Government advances no explanation sufficient to justify the delay. The affidavit of the SJA evidences gross negligence in the management of the post-trial review process. On the other hand, the appellant did not assert his right to a speedy review until the filing of his brief and assignments of error with this court and there has been no showing of any harm to the appellant from the delay.

The appellant was convicted of strictly military offenses that, while serious, are not of extreme gravity. Two of the charges stem from an incident in July 2002 when the appellant failed to change from his physical fitness gear when told to do so and rolled his eyes while being counseled. The appellant,

---

be considered in determining what findings and sentence should be approved, we are not establishing a bright-line time limit for post-trial processing. We agree with our Army brethren that our collective experience in this area dictates that we avoid such rule making. *See United States v. Garman,* 59 M.J. 677, 681 (Army Ct.Crim.App.2003)(citing *Dunlap v. Convening Authority,* 48 C.M.R. 751, 1974 WL 13908 (C.M.A.1974)).

5. We strongly encourage convening authorities and SJAs to provide reasons for any delay in the post-trial processing of a court-martial even if it does not exceed one year. We also encourage the use of the chronology sheet on the back of the record of trial cover sheet, DD Form 490 OCT 84, to document and explain post-trial processing delay from the adjournment of trial until docketing with this court.

stationed at the Aberdeen Proving Ground, was then absent for 28 days in September 2002 and was apprehended by Aberdeen police following a routine stop.

Upon consideration of the above factors, we have, therefore, concluded that the delay in this case does affect the "findings and sentence [that] 'should be approved' based on all the facts and circumstances reflected in the record...." *Tardif,* 57 M.J. at 224. Thus, we will grant relief in our decretal paragraph.

### Conclusion

The findings of guilty, as approved by the convening authority, are affirmed. Only so much of the sentence as provides for confinement for 57 days is affirmed. The supplemental court-martial order will properly reflect that the appellant pled not guilty to Charges I and II and the specifications thereunder.

Chief Judge DORMAN, Senior Judge CARVER, Senior Judge PRICE, Judge SUSZAN, and Judge FELTHAM concur.

Senior Judge RITTER (concurring in part and dissenting in part).

I agree with the majority's recommendation that the appropriate authorities should establish clear standards for post-trial processing in either the Rules for Courts–Martial or the Manual of the Judge Advocate General. I also agree that the majority's list of nonexclusive factors for applying this court's Article 66(c), UCMJ, discretionary power to the issue of post-trial delay is reasonable. My concurrence in this regard is based in part on my understanding that the court's one year "facially unreasonable" finding[1], is limited to the facts of this case and is not a pre-determination regarding post-trial delay in cases not before this court.

The majority's framework accurately distinguishes between legal due process and our power under Article 66(c). The factors listed by the majority are an effort to focus our discretion on legal standards, without resort to equitable principles. I view this as a well-intended effort to illuminate the criteria used by this court in our "separate and distinct" analysis of post-trial delay required by *United States v. Tardif,* 57 M.J. 219, 224 (C.A.A.F.2002).

But this decision should also highlight the inadvisability of leaving standards and remedies for this oft-occurring problem to a wholly discretionary power. Until uniform standards for post-trial delay are set forth in the Rules for Courts–Martial or the Manual of the Judge Advocate General, our secondary discretionary analysis will likely devolve into a paternalistic approach, completely unrestrained by the limitations inherent in Article 59(a), UCMJ. At some point, this decoupling of the two Articles may result in this court appearing to act more as a court of equity than a court of law.[2]

Absent uniform standards for such delay, we will have no measuring stick for the discretionary enforcement of an appellant's interest in timely post-trial processing to the extent that interest falls short of a due process right. The result will be disparate discretionary decisions that provide no real guidance to either appellants or the Government, and may appear in practice to border on equitable relief. Since our power *is* discretionary, this is not a critical problem, but for a more standardized application of justice, the current situation argues for swift action to establish uniform standards for post-trial processing of courts-martial.

### "Accepting the Unacceptable"

The new emphasis on Article 66(c), UCMJ, discretionary power leads the majority to grant relief today in the type of situation where this court has in the past been reluctant to grant it. In its own words, the majority "accepts the unacceptable" by awarding a windfall to the appellant on the

---

1. This finding is mentioned in the discussion of the first factor, length of the delay.

2. Without belaboring this controversial issue further, I suggest that Article 59(a), UCMJ, modifies Article 66(c), UCMJ, and that our discretion to determine the findings and sentence that "should be approved," though broad, should be exercised **only** on the basis of objective legal principles such as those used in the due process analysis, rather than using a non-exhaustive list of factors that could include each individual judge's subjective views of fairness.

basis of post-trial delay for which he made no complaint and suffered no prejudice. The delay, while long, is not so long that this court has routinely granted relief in the absence of prejudice. I must therefore respectfully dissent as to the holding in this case.

The appellant committed a series of relatively minor military offenses. But these offenses, because they were military in nature, strike at the heart of military discipline and morale, and they occurred during a time of combat operations in Afghanistan and during the prelude to war in Iraq. And since the post-trial delay in this case occurred as the United States armed forces were focused on preparing for, conducting, and following up military operations in Iraq, this court has seen and may confidently expect to see many more cases involving similar delay.

I view it as unlikely that staff judge advocates will be able to adequately explain how staffing shortages due to deployments directly affected the post-trial processing in specific cases, since such deployments normally affect the processing of all cases—not just specific ones—at any affected military unit. Thus, military operations are likely to have a more general effect on processing times, one that will not resonate in affidavits before this court. I submit that the result may be similar windfalls in other cases processed during the same time period, where urgent military operations resulted in staffing shortfalls in legal and administrative offices, in part because these cases will receive a heightened scrutiny regarding post-trial delay that was not fully in effect in the Navy and Marine Corps at the time the delay occurred.

I also respectfully submit that our decision today demonstrates the kind of mischief that an emphasis on discretionary power—without clearly-defined standards for post-trial processing delay—will play with lawful punishments on appeal in the future.

Senior Judge SCOVEL and Judge GEISER joining.

## Appendix I

### Rule 1115. Speedy post-trial review

(a) *In general.* In the event of a conviction and qualifying sentence under R.C.M. 1201(a), the record of trial shall be docketed with the Court of Criminal Appeals within one year of the date of sentencing. The date of sentencing shall not count; the date of docketing shall count. Records which are incomplete under R.C.M. 1103 shall not be accepted for docketing.

(b) *Exception for rehearing.* If the convening authority orders a rehearing under R.C.M. 1107(e), the period of time from the date of the rehearing order until the date of the convening authority's action upon the results of the rehearing shall be excluded when determining whether the period in subsection (a) has run.

(c) *Delay excluded by military judge or convening authority.* The military judge may approve post-trial delay occurring between sentencing and authentication of the record of trial. The convening authority may approve post-trial delay occurring between authentication and docketing. Except when the Court of Criminal Appeals concludes that the military judge or convening authority has abused his discretion in approving delay, such approved delay shall be excluded.

(d) *Other excludable delay.* All periods of time during which appellate courts have issued stays in the proceedings, or the accused is hospitalized due to incompetence, or is otherwise in the custody of the Attorney General, shall be excluded.

(e) *Remedy.* A failure to comply with the right to speedy post-trial review under this rule shall result in such relief as the Court of Criminal Appeals or the Court of Appeals for the Armed Forces deems appropriate in accordance with the Constitution, statute, and appellate case law. Such relief may include setting aside the findings and sentence and dismissal of the charges. Nothing in this rule is intended to preclude the convening authority from granting relief for post-trial delay in taking his action under R.C.M. 1107(a).

## Appendix II

### 0154 TIMELY FILING AND SUPERVISION OF COURT–MARTIAL RECORDS

a. *JAG supervision.* Records of all trials by courts-martial in the naval service are

under the supervision of the Judge Advocate General of the Navy.

b. *Delay in authentication of records of trial.* In the case of any record of trial required to be forwarded to the Navy–Marine Corps Appellate Review Activity as prescribed in sections 0153(1)(a)-(c), authentication of the record of trial should be completed as soon as possible following adjournment of the trial. In any case where authentication occurs more than 90 days after the date of adjournment, the individual who authenticates the record shall provide reasons for the delay and append them to the record of trial.

c. *Delay in convening authority's action on records of trial.* In the case of any record of trial required to be forwarded to the Navy–Marine Corps Appellate Review Activity as prescribed in sections 0153(1)(a)-(c), action by the convening authority should be completed as soon as possible following authentication. In any case where the convening authority takes action more than 180 days after authentication of the record of trial, the convening authority shall include in the action the reasons for the delay.

d. *Delay in receipt of records of trial for appellate review.* In the case of any record of trial and convening authority's action required to be forwarded to the Navy–Marine Corps Appellate Review Activity as prescribed in sections 0153(1)(a)—(c), the record of trial should be forwarded to the Navy–Marine Corps Appellate Review Activity as soon as possible after the date of the convening authority's action. In any case where the record of trial is not forwarded to the Navy–Marine Corps Appellate Review Activity within 90 days after the date of the convening authority's action, the convening authority shall provide the reasons for the delay and append them to the record of trial.

e. Nothing in this section should be construed as conferring a substantial right upon the accused or appellant in any court-martial.