# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

### v.

## Master Sergeant JAMEY L. CRAWFORD
### United States Air Force

## ACM 38408

## 9 April 2015

Sentence adjudged 20 March 2013 by GCM convened at Joint Base San Antonio-Lackland, Texas. Military Judge: Matthew D. Van Dalen (sitting alone).

Approved Sentence: Bad-conduct discharge, confinement for 7 months, hard labor without confinement for 2 months, and reduction to E-4.

Appellate Counsel for the Appellant: Captain Michael A. Schrama.

Appellate Counsel for the United States: Major Roberto Ramirez and Gerald R. Bruce, Esquire.

Before

MITCHELL, TELLER, SARAGOSA
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

MITCHELL, Senior Judge:

The appellant was convicted, pursuant to mixed pleas, by a military judge sitting alone, of failing to obey a lawful general regulation, making a false official statement, committing consensual sodomy, and committing adultery, in violation of Articles 92, 107, 125, and 134, UCMJ; 10 U.S.C. §§ 892, 907, 925, 934. The court sentenced him to a bad-conduct discharge, confinement for 7 months, hard labor without confinement for 2 months, and reduction to E-4. The convening authority approved the sentence as

adjudged and waived $1,500 of the pay per month from the automatic forfeitures to the accused's wife and dependent children.

The appellant alleges that the time taken to prepare his record of trial was an unreasonable delay that deprived him of his due process rights, that his sentence is inappropriately severe, that apparent unlawful command influence (UCI) so permeated the Air Force that he was unable to receive a fair trial and clemency consideration, and that criminalizing consensual sodomy violated his constitutional rights. In a supplemental assignment of errors, the appellant argues his plea of guilty to Charge I and its four specifications was improvident because the regulatory provision in question was not punitive. We disagree with all of the alleged errors. However, as a derivative argument on the constitutional challenge to the consensual sodomy charge, we separately conclude that there is an unreasonable multiplication of charges and set aside Charge III and its specification. We affirm the remaining charges and specifications. We reassess the sentence and determine that the approved sentence is appropriate.

*Background*

The appellant was a married military training instructor (MTI) stationed at Joint Base San Antonio-Lackland, Texas. In the spring of 2011, A1C AD attended basic military training (BMT). The appellant was not her MTI; however, he was responsible for all flights of trainees when they were in parades and ceremonies. Toward the end of her BMT, the appellant and A1C AD exchanged personal text messages. The day after she graduated from BMT and before she left for technical training, A1C AD and the appellant engaged in consensual sexual intercourse.

In the fall of 2011, A1C SG attended BMT. The appellant was not her flight leader but was in a supervisory role. After she graduated from BMT, A1C SG attended technical training in the local area. The appellant saw her on base and gave her his phone number. They spent time with each other on four or five occasions and twice engaged in consensual sexual activity.

*Charges Brought Under AETCI 36-2909*

The appellant pled guilty to four specifications of violating a lawful general order, Air Education and Training Command Instruction (AETCI) 36-2909, *Professional and Unprofessional Relationships* (2 March 2007) (certified current 26 September 2011). The order prohibited MTIs from developing or conducting a personal, intimate, or sexual relationship with a trainee. The appellant now challenges his pleas as improvident alleging that AETCI 36-2909 was not a lawful general order because it was not properly published pursuant to Air Force instructions. This court recently determined that AETCI 36-2909 is sufficient to be a lawful general order. *See United States v. Leblanc,*

__ M.J. __, ACM 38396 (A.F. Ct. Crim. App. 26 March 2015). We follow this binding precedent and reject the appellant's argument.

*Unlawful Command Influence*

As he did at trial, the appellant argues that UCI so permeated his trial that he was denied a fair trial and clemency consideration. The military judge considered the appellant's argument and evidence and denied the defense motion. The military judge based his ruling on the following findings of fact:

Lieutenant Colonel JC, the 331st Training Squadron Commander, preferred the charges and specifications on 24 October 2012 and Brigadier General TC, the 502d Air Base Wing Commander, referred them on 13 January 2013. There was media attention directed toward allegations of misconduct by military training instructors at Joint Base San Antonio-Lackland prior to the appellant's trial. However, "this coverage had subsided somewhat in recent months" and that only a few of the articles referenced the appellant. The previous 737th Training Group Commander, Col GP, made statements in April 2012 that there was a "cancer" in basic military training created by some MTIs who were "sullying the name" and he needed "to get them out." Col GP was removed from his position in August 2012. Sometime during the investigation, the appellant was relieved of his MTI duties, his photograph was removed from the array of current MTIs, and he was no longer authorized to wear the distinctive MTI hat. The Air Force Times also reported on statements made by the Air Force Chief of Staff (CSAF) in January 2013 regarding MTI misconduct.

We review allegations of UCI de novo. *United States v. Wallace*, 39 M.J. 284, 286 (C.M.A. 1994). Article 37(a), UCMJ, 10 U.S.C. § 837(a), states in part: "No person subject to this chapter may attempt to coerce or, by any unauthorized means, influence the action of a court-martial or any other military tribunal or any member thereof, in reaching the findings or sentence in any case . . . ." The appellant has the initial burden of raising UCI. *United States v. Stombaugh*, 40 M.J. 208, 213 (C.M.A. 1994). Once the issue of command influence is properly placed at issue, "no reviewing court may properly affirm findings and sentence unless [the court] is persuaded beyond a reasonable doubt that the findings and sentence have not been affected by the command influence." *United States v. Thomas*, 22 M.J. 388, 394 (C.M.A. 1986). At the appellate level, we evaluate UCI in the context of a completed trial using the following factors: "[T]he defense must (1) show facts which, if true, constitute [UCI]; (2) show that the proceedings were unfair; and (3) show that [UCI] was the cause of the unfairness." *United States v. Biagase*, 50 M.J. 143, 150 (C.A.A.F. 1999) (citing *Stombaugh*, 40 M.J. at 213); *see also United States v. Simpson*, 58 M.J. 368, 374 (C.A.A.F. 2003); *United States v. Reynolds*, 40 M.J. 198, 202 (C.M.A. 1994).

We reach the same conclusion as the military trial judge and deny the appellant any relief on this issue. We find the appellant has not met his burden of establishing facts that would constitute UCI. We do not see how the earlier statements of a prior commander who was no longer in that position can result in the UCI of a superior officer who made the decision to refer the charges. The CSAF's statements were made after the decision to prefer and refer the charges and we do not see any nexus between those statements and the commander's earlier decisions. When the military judge denied the motion, he also specifically held open reconsideration based on the member's responses during voir dire to questions about pretrial publicity. [1]  To the extent the appellant is arguing that pretrial publicity adversely affected his court-martial, we also find he has failed to meet his burden in that regard. *See United States v. Simpson*, 58 M.J. 368, 372 (C.A.A.F. 2003) (stating that the defense may raise the issue of unfair pretrial publicity by demonstrating either presumed or actual prejudice). Furthermore, the appellant chose to proceed without members. There is no evidence that any of the pretrial publicity or statements by the CSAF had any influence on the military judge. The military judge as the trier of fact is presumed to know the law and follow it. *United States v. Phillips*, 70 M.J. 161, 168 (C.A.A.F. 2011). We find no evidence in the record to rebut this presumption.

*Constitutionality of Article 125 for Consensual Sodomy*

The appellant challenges the constitutionality of his conviction for a violation of Article 125, UCMJ, Sodomy. Constitutional challenges to Article 125 are addressed on an as applied, case-by-case basis using a tripartite framework within the military context. *United States v. Stirewalt*, 60 M.J. 297, 304 (C.A.A.F. 2004).

> First, was the conduct that the accused was found guilty of committing of a nature to bring it within the liberty interest identified by the Supreme Court? Second, did the conduct encompass any behavior or factors identified by the Supreme Court as outside the analysis in *Lawrence*? Third, are there additional factors relevant solely in the military environment that affect the nature and reach of the *Lawrence* liberty interest?

*United States v. Marcum*, 60 M.J. 198, 206-07 (C.A.A.F. 2004) (citing to *Lawrence v. Texas*, 539 U.S. 558 (2003)) (citation omitted).

We conclude that the Article 125, UCMJ, as applied to the appellant is constitutional based on the factors unique to the military environment evident in this case.

---

[1] Within two weeks of referral, the military judge issued an order to all the prospective members prohibiting them from reading or listening to stories about the appellant or cases with similar allegations. The order also required the members to report any knowledge of articles.

A1C SG attended BMT from September to November 2011. The appellant was not her MTI but she knew that he was an MTI. She interacted twice with him during BMT and both times the appellant acted professionally. Approximately two to three weeks after she graduated BMT, A1C SG and a friend saw the appellant and after some conversation she asked for his phone number which he provided. Sometime later, the appellant picked up A1C SG and her friend from the bowling alley and drove them to a hotel. While her friend stayed at the front of the room with another MTI, A1C SG and the appellant retreated to the bedroom. When asked what happened next, A1C SG explained, "We were talking and we had sex." This included the appellant using his tongue and his penis to penetrate her vagina. A1C SG agreed that the sexual activity was consensual and the appellant did not force her.

The evidence is that the appellant and A1C SG were competent adults who engaged in private consensual sexual activity. The nature of the activity brings it within the sphere of the liberty interests identified by the Supreme Court and does not include any behavior or factors outside that *Lawrence* analysis. In short, this case is strikingly similar to *Lawrence* in that it involves "two adults who, with full and mutual consent from each other, engaged in sexual practices" that included sodomy. *Lawrence*, 539 U.S. at 578. However, "servicemembers . . . do not share the same autonomy as civilians." *Marcum*, 60 M.J. at 206. "We consider [the appellant's] zone of autonomy and liberty interest in light of the established [service] regulations and the clear military interests of discipline and order that they reflect." *United States v. Stirewalt*, 60 M.J. 297, 304 (C.A.A.F. 2004). Here the appellant's actions were in violation of AETCI 36-2909. There is no evidence in the record that the appellant had an authority or responsibility over A1C SG other than that inherent in the difference between their ranks. The AETCI prohibits the appellant as an MTI from engaging in certain relationships with trainees who have completed training but have not yet reported to their permanent duty station. It specifically prohibits a "personal, intimate or sexual relationship" between MTIs and trainees. Based solely on this third *Marcum* factor, we conclude the appellant's consensual sexual relationship with A1C SG is outside the bounds of constitutionally protected activity because it was explicitly prohibited by the AETC instruction.

*Unreasonable Multiplication of Charges*

When reviewing issues of unreasonable multiplication, we apply a five-part test that considers: (1) whether an objection was made at trial, (2) whether the specifications are aimed at distinct criminal acts, (3) whether the number of charges and specifications misrepresent or exaggerate the charged criminality, (4) whether the number of charges and specifications unreasonably increase the punitive exposure, and (5) whether the evidence shows prosecutorial overreaching or abuse in drafting the charges. *United States v. Pauling*, 60 M.J. 91, 95 (C.A.A.F. 2004) (citing *United States v. Quiroz*, 55 M.J. 334, 338 (C.A.A.F. 2001)). The factors are to be balanced, with no single factor

dictating the result. *Id.* We review a military judge's determination that charges were not unreasonably multiplied for an abuse of discretion. *Id.*

Based on his interactions with A1C SG, the appellant was convicted of four offenses[2]: Specification 3 of Charge I for violating the lawful general regulation AETCI 36-2909 by establishing or carrying on a personal social relationship with her, Specification 4 of Charge I for violating the lawful general regulation AETCI 36-2909 by wrongfully conducting a sexual relationship with her, Charge III and its specification for committing sodomy with her, and Specification 2 of Charge IV for committing adultery (wrongful sexual intercourse with a woman who was not his wife). The appellant objected at trial and the military judge denied the motion to dismiss based on multiplicity and we concur. However, the military judge found evidence of overreaching and unreasonableness. For the offenses involving A1C SG, the military judge merged the specifications of Charge I for violating the lawful general order and the adultery specification. The military judge denied any relief regarding the sodomy charge.

We conclude that the military judge erred by not granting any relief regarding the sodomy charge. As addressed above, the sodomy charge only survives the constitutional challenge because it violates unique military concerns in prohibiting personal and sexual relationships between MTIs and those individuals who have completed BMT but remain in a training status; in short he was convicted of engaging in sexual activity (sodomy) with her that was only unlawful because it violated the AETCI. The appellant was also convicted for violating the AETCI for having a sexual relationship with A1C SG. We find this to be an unreasonable multiplication of charges and set aside Charge III and its specification.[3]

In *United States v. Campbell*, 71 M.J. 19 (C.A.A.F. 2012), our superior court held that in the context of unreasonable multiplication of charges, a military judge has broad discretion to dismiss offenses, merge offenses, or merge offenses only for purposes of sentencing.

The military judge denied the motion to dismiss the adultery specifications. The military judge merged the adultery specification with the specifications regarding violations of the AETCI for the appellant's interactions with A1C SG. The military judge also merged the adultery specification with the specifications alleging a violation of the AETCI for the appellant's interactions with A1C AD. After the military judge denied the motion to dismiss and merged the specifications for sentencing purposes, the

---

[2] After arraignment and the plea inquiry, the trial counsel withdrew Specification 5 of Charge I alleging another violation of the lawful general regulation for conducting a sexual relationship with A1C SG after 3 January 2012.

[3] Our set aside of Charge III and its specification is a conditional set aside dependent upon affirming Specification 4 of Charge I or a lesser included offense. *See United States v. Stanley,* 60 M.J. 622, 630 (A.F. Ct. Crim. App. 2004) (conditionally dismissing one of two charges stemming from the same underlying conduct and reassessing the sentence accordingly).

appellant pled guilty to these specifications. We find the following portion of the plea inquiry regarding the adultery with A1C AD to be informative:

> MJ:    As, before I'm going to ask some follow-up questions. This appears to be the same conduct which underlies Specification 2 of Charge I [(violation of AETCI 36-2909 by having vaginal intercourse with A1C AD)] that you discussed earlier. Is that accurate?
>
> ACC: Yes, sir.
>
> MJ:    So all those facts that you gave me previously also apply to this specification?
>
> ACC: Yes, sir

We do not find an abuse of discretion in the military judge's merging, instead of dismissing, the adultery specifications. *Cf. United States v. Elespuru*, 73 M.J. 326, 329–30 (C.A.A.F. 2014) (recognizing that dismissal of one specification charged in the alternative of another is appropriate where the factfinder returns findings of guilt on both specifications, even where the issue has been waived at trial). The trial counsel specifically stated that these offenses were not charged in the alternative but instead were aimed at specifically different criminal aspects of the appellant's same behavior. However, the evidence at trial focused on the adultery being criminal because it violated the AETCI which limited MTI and trainee relationships. *See United States v. Gutierrez*, 74 M.J. 61 (C.A.A.F. 2015) (holding that the appellant's adultery was wrongful because it violated his commander's order and therefore fell outside of constitutional liberty interests). Not only do we conclude that the military judge did not abuse his broad discretion in fashioning an appropriate remedy, but we note that charging both offenses for the exact same behavior is direct evidence of overreach under *Quiroz*. The military judge could have dismissed or conditionally dismissed the adultery specifications; however, his decision to merge them for sentencing purposes was not an abuse of his broad discretion.

*Post-Trial Processing*

*a. Completion of the Record of Trial and Convening Authority's Action*

We review de novo whether an appellant has been denied the due process right to speedy post-trial review and whether any constitutional error is harmless beyond a reasonable doubt. *United States v. Allison*, 63 M.J. 365, 370 (C.A.A.F. 2006). The appellant's court-martial concluded on 20 March 2013 and the convening authority issued the action 120 days later on 18 July 2013. The appellant concedes that this does

not trigger the presumption of unreasonable established in *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). However, the appellant argues the unique facts of his case render the post-trial processing prejudicially unreasonable. The appellant notified the legal office that he intended to apply to the return to duty program (RTDP), he needed a completed record of trial as a prerequisite and that all applications to the program were due by 31 May 2013 as the program was being eliminated. A lieutenant colonel, three master sergeants, and the military judge all wrote letters supporting the appellant's RTDP admission. On 18 May 2013, the chief of military justice explained that there were 18 courts-martial and administrative discharge boards in post-trial processing, that the base had requested additional assistance, and that they were prioritizing the caseload based on *Moreno* requirements as well as expiration of term of service dates. We conduct a case-specific analysis to determine if any given delay is facially unreasonable and if the delay is not, then the full due process analysis is not triggered. *Toohey v. United States*, 60 M.J. 100, 103 (C.A.A.F. 2004). We conclude that the length of time to complete the record of trial was reasonable. Additionally, to the extent that "malicious delay" may require additional analysis, we conclude that any delay was not malicious. *See United States v. Mackie*, 72 M.J. 135, 136 (C.A.A.F. 2013) (holding that malicious delay as factor is a question for another day). Therefore, the full analysis is not required and the appellant is not entitled to any relief.

b. *Appellate Review*

This case was docketed with us on 12 August 2013 and the decision was issued 20 months later. When appellate review is not completed and a decision is not rendered within 18 months after docketing with the court, there is a presumption of unreasonable delay. *Moreno*, 63 M.J. at 142. Because the time from docketing to the initial decision violates the *Moreno* standard, this presumptively unreasonable delay triggers an analysis of the four factors elucidated in *Barker v. Wingo*, 407 U.S. 514, 530 (1972), adopted in *Moreno*, 63 M.J. at 135. Those factors are "(1) the length of the delay; (2) the reasons for the delay; (3) whether the appellant made a demand for a speedy trial; and (4) prejudice to the appellant." *United States v. Mizgala*, 61 M.J. 122, 129 (C.A.A.F. 2005) (citing *Barker*, 407 U.S. at 530).

The delay is presumptively unreasonable, so it weighs in favor of the appellant and we turn to the other factors. *Moreno*, 63 M.J. at 136. The appellant has not specifically made a demand for speedy appellate review. However, because his initial assignment of error raised a complaint about the "unreasonable" delay in post-trial processing, we find this factor weighs, minimally, in favor of the appellant.

As for the reasons for the delay, the appellant submitted an original assignment of errors on 12 May 2014. Over government opposition, the appellant submitted an additional assignment of error on 17 October 2014. This additional assignment of error alleged that the appellant's pleas were not provident as the underlying instruction was not

punitive. We have addressed the merits of this argument. *See supra* pp. 2–3. The same challenge to AETCI 36-2909 was also raised in *Leblanc,* ACM 38396. This court decided to consider that case en banc and issued a written decision. This opinion was issued shortly afterwards. Regarding the time for our consideration of the merits of appellant's case, our superior court applies "a more flexible review of this period, recognizing that it involves the exercise of the Court of Criminal Appeals' judicial decision-making authority." *Moreno*, 63 M.J. at 137. In *Moreno*, our superior court held that "a period of slightly over 6 months is not an unreasonable time for review by the Court of Criminal Appeals." *Id.* at 137–38. It would be inconsistent to allow the appellant to file a supplemental pleading raising new errors unrelated to post-trial processing delay and then to hold the additional time to consider these new matters against the government. We conclude this factor weighs against the appellant.

When assessing prejudice for a due process post-trial delay analysis, we examine "three similar interests for prompt appeals: (1) prevention of oppressive incarceration pending appeal; (2) minimization of anxiety and concern of those convicted awaiting the outcome of their appeals; and (3) limitation of the possibility that a convicted person's grounds for appeal, and his or her defenses in case of reversal and retrial, might be impaired." *Moreno*, 63 M.J. at 138–39. The second factor requires "an appellant to show particularized anxiety or concern that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision." *Id.* at 140. Regardless of any minimal release date, the appellant had served his complete sentence to confinement prior to filing his first assignment of error. The appellant has also not identified any particularized anxiety.

When there is no showing of prejudice under the fourth *Barker* factor, "we will find a due process violation only when, in balancing the other three factors, the delay is so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system." *Toohey*, 63 M.J. at 362. Having considered the totality of the circumstances and the entire record, when we balance all the factors, we find the post-trial delay in this case to not be so egregious as to adversely affect the public's perception of the fairness and integrity of the military justice system. We are convinced the error is harmless beyond a reasonable doubt.

*Tardif Relief*

Additionally, Article 66(c), UCMJ, 10 U.S.C. § 866(c), empowers appellate courts to grant sentence relief for excessive post-trial delay without the showing of actual prejudice required by Article 59(a), UCMJ, 10 U.S.C. § 859(a). *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002); *see also United States v. Harvey*, 64 M.J. 13, 24 (C.A.A.F. 2006). In *United States v. Brown*, 62 M.J. 602, 606–07 (N.M. Ct. Crim. App. 2005), our Navy-Marine Corps Court colleagues identified a "non-exhaustive" list of factors to consider in evaluating whether Article 66(c), UCMJ,

relief should be granted for post-trial delay. Among the non-prejudicial factors are the length and reasons for the delay, the length and complexity of the record, the offenses involved, and the evidence of bad faith or gross negligence in the post-trial process. *Id.* at 607. Many of these factors are addressed above. We conclude that sentence relief under Article 66, UCMJ, is not warranted

*Sentence Reassessment*

This Court has "broad discretion" when reassessing sentences. *United States v. Winckelmann*, 73 M.J. 11, 12 (C.A.A.F. 2013). Our superior court has repeatedly held that if we "can determine to [our] satisfaction that, absent any error, the sentence adjudged would have been of at least a certain severity, then a sentence of that severity or less will be free of the prejudicial effects of error." *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986). This analysis is based on a totality of the circumstances with the following as illustrative factors: dramatic changes in the penalty landscape and exposure, the forum, whether the remaining offenses capture the gravamen of the criminal conduct, whether significant or aggravating circumstances remain admissible and relevant, and whether the remaining offenses are the type that we as appellate judges have experience and familiarity with to reliably determine what sentence would have been imposed at trial. *Winckelmann*, 73 M.J. at 15–16.

The remaining offenses capture the gravamen of the criminal conduct. The appellant, as an MTI, was prohibited from having personal and sexual relationships with A1C AD and A1C SG as they were still considered trainees even though they had completed BMT. Our grant of relief to the appellant is based precisely on the concept that the remaining specifications fully encompass the criminal conduct expressed in the charge and specification we dismissed. All the significant and aggravating circumstances remain admissible and relevant. Because the military judge had merged most of the charges and specifications, we find that there is no dramatic change in the penalty landscape. The forum was military judge alone and we are "more likely to be certain of what a military judge would have done." *Winckelmann*, 73 M.J. at 16. We reassess to the same sentence the military judge originally adjudged. We are confident that correction of the errors addressed above would not have reduced the adjudged sentence.

*Conclusion*

We, conditionally, set aside Charge III and its specification. We affirm the remaining findings. The findings, as conditionally modified, and the sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ.

Accordingly, the approved findings, as modified, and the sentence are

AFFIRMED.

FOR THE COURT

LEAH M. CALAHAN
Deputy Clerk of the Court