**UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS**

**UNITED STATES**

**v.**

**Senior Airman MATTHEW A. THEURER**
**United States Air Force**

**ACM 38658**

**28 May 2015**

Sentence adjudged 28 January 2014 by GCM convened at Seymour Johnson Air Force Base, North Carolina. Military Judge: Michael J. Coco and Joshua E. Kastenberg (sitting alone).

Approved Sentence: Dishonorable discharge, confinement for 40 years, and reduction to E-1.

Appellate Counsel for the Appellant: Major Jeffrey A. Davis.

Appellate Counsel for the United States: Major Roberto Ramírez and Gerald R. Bruce, Esquire.

Before

ALLRED, HECKER, and TELLER
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

HECKER, Senior Judge:

A general court-martial composed of a military judge alone convicted the appellant, in accordance with his pleas, of making a false official statement, murder, child endangerment, and obstruction of justice, in violation of Articles 107, 118, and 134, UCMJ, 10 U.S.C. §§ 907, 918, 934. The appellant was sentenced to a dishonorable discharge, confinement for life, forfeiture of all pay and allowances, and reduction to E-1. In accordance with a pretrial agreement, the convening authority approved the dishonorable discharge, confinement for 40 years, and reduction to E-1.

On appeal, pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), the appellant contends his sentence is inappropriately severe and that post-trial processing delays warrant sentence relief. Finding no error that materially prejudices a substantial right of the appellant, we affirm the findings and sentence.

*Background*

The charges in this case revolve around the tragic death of the appellant's 14-month-old son. After the infant was born in December 2011, he lived with his mother, AJT, and the appellant on Seymour Johnson Air Force Base (AFB), North Carolina. When the infant was five months old, AJT left the appellant due to marital problems and moved to Indiana with the infant.

In late July 2012, AJT asked the appellant to retrieve the baby as she was unable to care for him. The appellant brought the baby back to Seymour Johnson AFB and the two lived on base. After the appellant was late to work on several occasions in November 2012 due to child care issues, his section chief directed him to enroll the now 11-month-old child in the base child development center (CDC). When the appellant indicated that enrollment had occurred, his unit put him on a modified work schedule to accommodate the childcare center's limited hours. In fact, the appellant had completed paperwork to enroll the infant, but never took him to the CDC, despite the child being accepted.

In early December 2012, the appellant moved a woman he had met online into his on base house. She cared for the child for approximately one month, before she was ordered off base in early January 2013 due to improper sponsorship by the appellant.

From that time forward, the appellant would leave the child alone in the house each day while he went to work. The child would be left in his crib or on the floor for at least 12 hours per day, without adequate food, hydration, or supervision. In his guilty plea inquiry, the appellant stated he would feed his son in the morning and the evenings, but often did not give him age appropriate food. On one occasion in January 2013, he left the child for approximately 24 hours while he traveled to meet a woman he met on a dating website. Throughout this time period, the appellant did not seek assistance and turned down several offers of assistance from friends, none of whom understood the severity of the situation. The appellant told investigators he could see the child was getting skinnier, but he did not take him for medical care because he was afraid of what would happen.

According to the appellant, on 15 February 2013, he gave the child a cup of milk and a piece of toast and left him alone in the house for over 12 hours. He returned home and eventually went to check on his son. The child was lifeless on the floor. The

appellant stated he became distraught, placed the child in multiple trash bags and put him in his car, along with his luggage for his planned trip to visit the woman in South Carolina. He threw his son's body into the woods and continued with his trip.

Beginning the day the child died, the appellant started lying to family members about the status of the child. By 10 March 2013, AJT and her family became suspicious and contacted the base command post. When asked by personnel from his unit, the appellant said the child had been sick but that he had been in contact with a doctor. Later that evening, the appellant was directed by personnel from his chain of command to return home for an inspection. His house was found to be in an unsanitary and unlivable condition, and the appellant falsely told his first sergeant that the child was with an off-base babysitter. The next day, the house again failed inspection, and the appellant was ordered to have the child home the following day, when another inspection would occur. The appellant attempted suicide that night and ultimately admitted that his son was "gone" and had died in February.

Under rights advisement, the appellant admitted to the events surrounding the child's death and provided information on where his body could be found. A subsequent autopsy revealed the emaciated child died from severe malnutrition as a result of neglect. The child's body weighed just under 14 pounds, which is under the 5th percentile for children that age. There were no signs of physical abuse.

The appellant pled guilty to murdering his son by engaging in the inherently dangerous acts of starvation and maltreatment. He admitted that leaving his young child alone in the manner described above and his failure to seek medical treatment for the child demonstrated a wanton disregard for human life, and that he knew death or great bodily harm was a probable consequence of his failure to feed and hydrate the child. He admitted he could have done so or had others take care of the child if he had wanted. The appellant also pled guilty to child endangerment for leaving the child alone and failing to adequately feed and obtain medical care for him.

The appellant also pled guilty to obstructing justice by wrapping his son's body in trash bags and leaving it beside a road. For stating on 10 March 2013 that his child was with an off-base babysitter when, in fact, he was dead, the appellant pled guilty to making a false official statement.

*Sentence Appropriateness*

Pursuant to *Grostefon*, the appellant asserts that his sentence is inappropriately severe based on sentence comparisons. To support this claim, he cites two cases referenced in his clemency submission to the convening authority, and argues that his sentence to 40 years confinement is inappropriately severe when compared to the sentences in those cases.

This court reviews sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006). We "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as [we find] correct in law and fact and determine[], on the basis of the entire record, should be approved." Article 66(c), UCMJ, 10 U.S.C. § 866(c). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offenses, the appellant's record of service, and all matters contained in the record of trial." *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009). Although we are accorded great discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

In exercising sentence appropriateness review, "[t]he Courts of Criminal Appeals are required to engage in sentence comparison only 'in those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases.'" *United States v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001) (quoting *United States v. Ballard*, 20 M.J. 282, 283 (C.M.A. 1985)). An appellant bears the burden of demonstrating that any cited cases are "closely related" to the appellant's case and the sentences are "highly disparate." *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999). Closely related cases include those which pertain to "coactors involved in a common crime, servicemembers involved in a common or parallel scheme, or some other direct nexus between the servicemembers whose sentences are sought to be compared." *Id.* If the appellant meets his or her burden to demonstrate closely related cases involve highly disparate sentences, the government "must show that there is a rational basis for the disparity." *Id.*

We reject the appellant's invitation to engage in sentence comparison. The cases he cites do not involve coactors involved in a common crime, servicemembers involved in a common or parallel scheme, or some other direct nexus between the servicemembers. Although each case[*] involved the death of a child, this falls short of the requirement that the referenced cases be "closely related." There is no direct nexus between the three perpetrators (the appellant and the other two cases) in these cases and as such, the appellant has failed to meet his burden of demonstrating that the cases are closely related.

We next consider whether the appellant's sentence was appropriate "judged by 'individualized consideration' of the [appellant] 'on the basis of the nature and seriousness of the offense and the character of the offender.'" *United States v. Snelling*, 14 M.J. 267, 268 (quoting *United States v. Mamaluy*, 27 C.M.R. 176, 180–81 (C.M.A. 1959)). We have given individualized consideration to this particular appellant, the

---

[*] In one case, a civilian spouse of an active duty Airman was convicted by a civilian jury in Texas for the starvation death of her 22-month old-daughter, and received a 30-year prison sentence. The other case involved an active duty Airman who was convicted of the involuntary manslaughter of his 7-week-old baby and was sentenced to 5 years of confinement.

nature and seriousness of the offenses, the appellant's record of service, and all other matters contained in the record of trial. We find the approved sentence was clearly within the discretion of the convening authority, was appropriate in this case, and was not inappropriately severe.

*Appellate Review Time Standards*

The appellant asserts he is entitled to relief because the government violated his due process right to timely post-trial processing of his case when 184 days elapsed after trial before the convening authority took action.

We review claims that an appellant was denied his due process right to speedy post-trial processing de novo. *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). In conducting this review, we assess the four factors laid out in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Moreno*, 63 M.J. at 135 (citing *United States v. Jones*, 61 M.J. 80, 83 (C.A.A.F. 2005)); *see also United States v. Toohey*, 60 M.J. 100, 102 (C.A.A.F. 2004). There is a presumption of unreasonable delay when the convening authority does not take action within 120 days of the completion of trial. *Moreno*, 63 M.J. at 142. As the convening authority's action did not take place within 120 days of the completion of trial, the length of the delay is unreasonable on its face, and we proceed to an analysis of the remaining three *Barker* factors.

Through a chronology included within the record of trial, the government provides reasons for the delay. The appellant's trial concluded on 28 January 2014. The record of trial was completed 23 days later but was not authenticated by the military judge until 11 April 2014 (day 73 following trial). The staff judge advocate's recommendation (SJAR) was not served on defense counsel until almost a month later (day 98). The defense requested, and was given, a five-day extension in the deadline for the clemency submission, making the defense submission due on day 115. The defense submitted its clemency package on that day, but two weeks later the convening authority requested additional information from the defense regarding its request for waiver of forfeitures. The convening authority granted the defense request that he delay action in the case while the defense gathered the required documentation. The totality of this information was not produced by the defense until 21 July 2014, and the convening authority took action in the case 10 days later.

When considered in its totality, the second *Barker* factor weighs slightly in favor of the appellant. Although there were delays in the government's accomplishment of several steps within the post-trial processing, the primary delay resulted from the defense gathering material that the convening authority required prior to approving waiver of forfeitures. We recognize that if the initial processing of the case had been faster, the

time required for the appellant to meet that requirement would have been within the 120-day time period.

For the third factor, although the government carries the primary responsibility for speedy post-trial processing, *United States v. Bodkins*, 60 M.J. 322, 323–24 (C.A.A.F. 2004), the appellant did not assert his right to speedy post-trial processing until now on appeal, never asserting this right during the time of this initial delay.

Finally, on the fourth factor, the appellant fails to articulate any prejudice in this case. When there is no showing of prejudice under the fourth factor, "we will find a due process violation only when, in balancing the other three factors, the delay is so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 361–62 (C.A.A.F. 2006). Having considered the totality of the circumstances and the entire record, when we balance the other three factors, we find the post-trial delay in this case to not be so egregious as to adversely affect the public's perception of fairness and integrity of the military justice system. We are convinced the error is harmless beyond a reasonable doubt.

While we find the post-trial delay was harmless, that does not end our analysis. Article 66(c), UCMJ, empowers appellate courts to grant sentence relief for excessive post-trial delay without the showing of actual prejudice required by Article 59(a), UCMJ, 10 U.S.C. § 859(a). *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002); *see also United States v. Harvey*, 64 M.J. 13, 24 (C.A.A.F. 2006). In *United States v. Brown*, 62 M.J. 602, 606–07 (N.M. Ct. Crim. App. 2005), our Navy and Marine Court colleagues identified a "non-exhaustive" list of factors to consider in evaluating whether Article 66(c), UCMJ, relief should be granted for post-trial delay. Among the non-prejudicial factors are the length and reasons for the delay; the length and complexity of the record; the offenses involved; and the evidence of bad faith or gross negligence in the post-trial process. *Id.* at 607. Although the record of trial was not long or complex, we nevertheless find there was no bad faith or gross negligence in the post-trial processing and the length of delay was minimal. We conclude that sentence relief under Article 66, UCMJ, is not warranted.

*Conclusion*

The approved findings and the sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ.

Accordingly, the approved findings and the sentence are **AFFIRMED**.

FOR THE COURT

STEVEN LUCAS
Clerk of the Court

ACM 38563