# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

**v.**

**Senior Airman SEAN J. CHERO**
**United States Air Force**

**ACM 38470**

**28 April 2015**

Sentence adjudged 22 June 2013 by GCM convened at Fairchild Air Force Base, Washington. Military Judge: Christopher M. Schumann.

Approved Sentence: Dishonorable discharge, confinement for 3 years, forfeiture of all pay and allowances, reduction to E-1, and a reprimand.

Appellate Counsel for the Appellant: Major Christopher D. James.

Appellate Counsel for the United States: Major Daniel J. Breen; Major Mary Ellen Payne; and Gerald R. Bruce, Esquire.

Before

HECKER, MITCHELL, and TELLER
Appellate Military Judges

OPINION OF THE COURT

<u>This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.</u>

MITCHELL, Senior Judge:

A general court-martial composed of officer members convicted the appellant, contrary to his plea, of sexual assault, in violation of Article 120(b)(2), UCMJ, 10 U.S.C. § 920(b)(2).[1] The adjudged and approved sentence was a dishonorable discharge, 3 years of confinement, forfeiture of all pay and allowances, reduction to E-1, and a reprimand.

---

[1] Because the offense occurred on or about 25 November 2012, the appellant was charged under the current version of Article 120, UCMJ, 10 U.S.C. § 920, applicable to offenses committed on or after 28 June 2012.

The appellant avers the following errors:  (1) the military judge erred in providing findings instructions that included a reference to a sleeping person as someone who cannot consent, (2) the evidence is legally and factually insufficient, (3) the military judge abused his discretion in determining the maximum sentence for the offense, and (4) he was deprived of his right to speedy trial in the appellate review process when action occurred 121 days after the court-martial was completed.  We disagree and affirm the findings and sentence.

*Background*

In a signed sworn statement, which was admitted into evidence, the appellant described how he and some friends, to include Staff Sergeant (SSgt) SF, met for drinks on the evening of 24 November 2012.  He and SSgt SF were texting earlier that evening, and he knew she was upset.  When they met at a mutual friend's home, everyone in their group had a shot of whiskey.  They then went to Lucky's Bar where more drinks were consumed.  The appellant bought SSgt SF three beers and another shot of whiskey.  The group then proceeded to another bar.  After an altercation among friends at that second bar, the appellant took SSgt SF back to his home.  Although he initially wrote that they engaged in consensual sexual activity, at the end of the statement he admitted "the truth is that she passed out and I proceeded to have sex with her."  The appellant also differentiated himself from others whom he knew had committed sexual assaults and wrote, "I don't want to be viewed as a rapist or a sex offender of any kind . . . [the others] denied everything they did . . ., they're rapists, I made the biggest mistake of my life but I am being a fucking man and admitting that I fucked up and theres [sic] nothing I can do to change that . . . ."

Other witnesses, to include SSgt SF, corroborated the appellant's confession.

*Findings Instructions Regarding "Unconscious or Otherwise Unaware"*

SSgt SF confirmed that she and the appellant were friends.  She met the appellant and some other friends for a night out on the town on 24 November 2012.  They went to two bars where she had alcoholic drinks, some of which the appellant purchased her.  After she and another friend had a verbal altercation, SSgt SF decided to go home.  The appellant offered to drive her home in his car.  SSgt SF testified that after she entered the appellant's car for a ride home she experienced the following:  "The heat hit me and at that point, I was really tired and I just . . . the last thing that I remember was buckling my safety belt in his car and the heat hit over me and I then, from that point, knocked out like I was falling asleep."

She next had a flash of memory of vomiting while hanging her head outside the car.  She testified:  "The next thing, I woke up and my head was pounding and I was laying [sic] on a bed."  She described finding her shirt and bra pulled up and her pants

and underwear pulled down around her ankles. Her vaginal area was sore, and there was semen on her face, chest, and stomach and wetness around her legs. A man had his arm around her back and his penis was against her leg. At that moment, SSgt SF did not know where she was or who was lying in bed with her. After the man got up from the bed, she opened one eye and saw that it was the appellant. She described herself as feeling violated and scared and unsure of what she should do so she pretended to still be asleep. The appellant returned to the bed and used a rag to clean up her body and redressed her. He then woke her up by calling her name while tapping her face and splashing her with water. After she left the appellant's home, she went to a friend's residence where she reported that she had been raped, first to her friend and the police immediately thereafter.

The appellant was charged with sexual assault pursuant to Article 120(b)(2), UCMJ. Using the words found in the charged specification, the military judge instructed the members that the charged offense had two elements: (1) the appellant committed a sexual act (sexual intercourse) upon SSgt SF and (2) he did so when he knew or reasonably should have known that she was unconscious or otherwise unaware that the sexual act was occurring. The military judge also provided instructions on consent, including that evidence of consent may provide a reasonable doubt as to whether the appellant knew or reasonably should have known that the alleged victim was unconscious or otherwise unaware. Along with this instruction, the military judge stated, "A sleeping, unconscious, or incompetent person cannot consent to a sexual act." Trial defense counsel affirmatively stated that he did not object to any of the military judge's instructions.

Later, the members asked the military judge additional questions about the instructions to include a question about the interplay between consent and unconsciousness. The military judge explained that if there was evidence that SSgt SF consented, then that evidence would show she was conscious. The military judge further explained, "So, again, with regard to the evidence that you've got, if you look at that evidence and you feel that there is some evidence of consent, or any other really [sic] evidence of consciousness, that may demonstrate that [SSgt SF] was, in fact, conscious and therefore, the government fails on the second element . . . ." The military judge also explained, "The issue is whether or not the accused knew or reasonably should have known that [SSgt SF] was either unconscious or otherwise unaware . . . whether that condition, if it existed, was contributed by alcohol use, by tiredness . . . it really is just a matter of how you interpret the strength and the weight of the evidence as to whether or not that element is met." Trial defense counsel did not raise any objections to the military judge's additional instructions.

The appellant now contends that he was not charged with committing this offense while SSgt SF was asleep, and therefore the military judge should not have instructed the members that a sleeping person was unable to consent. He further argues that he was not

on notice that the charged phrase "unconscious or otherwise unaware" includes a person who is asleep.

### A. Due Process and Fair Notice

We address first the appellant's implicit challenge to the charge and specification on due process and fair notice grounds, and we reject his argument.

> The military is a notice pleading jurisdiction. A charge and specification will be found sufficient if they, first, contain the elements of the offense charged and fairly inform a defendant of the charge against which he must defend, and, second, enable him to plead an acquittal or conviction in bar of future prosecutions for the same offense. The rules governing court-martial procedure encompass the notice requirement: A specification is sufficient if it alleges every element of the charged offense expressly or by necessary implication.

*United States v. Fosler*, 70 M.J. 225, 229 (C.A.A.F. 2011) (citations and internal quotation marks omitted).

Here, the specifications contain every element of the offenses as enacted by Congress.

> The Supreme Court has observed that the definition of the elements of criminal offense is entrusted to the legislature, particularly in the case of federal crimes, which are solely creatures of statute. Congress has broad authority to define the elements of offenses under the constitutional power to make rules for the government and regulation of the armed forces.

*United States v. Neal*, 68 M.J. 289, 300 (C.A.A.F. 2010) (citations and internal quotation marks omitted).

Due process requires that a military member have fair notice that an act is forbidden and subject to criminal sanctions before he can be prosecuted for it. *United States v. Vaughan*, 58 M.J. 29, 31 (C.A.A.F. 2003). We conclude that Congress provided the required due process notice when it revised Article 120, UCMJ, as a punitive article established by the National Defense Authorization Act for Fiscal Year 2012. The appellant has been on notice since this law was passed by Congress. While an Executive Order providing further guidance would be welcome, it is not required to

establish the elements or provide fair notice of the offense.[2] The elements of federal criminal law are established by Congress. *See United States v. Jones*, 68 M.J. 465, 478 (C.A.A.F. 2010). The referred specifications and charges included the congressionally mandated elements.

We reject the appellant's argument that he was not on notice that the phrase "unconscious or otherwise unaware" includes a person who is asleep. The law clearly prohibits sexual acts with those who are "asleep, unconscious or otherwise unaware." We acknowledge that the charged specification lists only "unconscious or otherwise unaware" and inexplicably omitted the word "asleep."[3] We do not find this omission to result in a fatal variance; asleep is just one example of how an individual may be "otherwise unaware" and is not an alternative theory. *Cf. United States v. Mandy*, 73 M.J. 619 (A.F. Ct. Crim. App. 2014) (concluding that the appellant's conviction of malingering by exaggerating an injury was a fatal material variance from charged offense of malingering by self-injury). We also note that the investigating officer included "asleep" in the elements of the charged specification and referenced the possibility that SSgt SF was "asleep" during the Article 32, UCMJ, 10 U.S.C. § 832, investigation. Furthermore, the primary defense theory at trial was that this sexual encounter was consensual and SSgt SF was misrepresenting or exaggerating her lack of awareness of the encounter.

## B. Military Judge's Findings Instructions

The appellant did not object to the instructions regarding a sleeping victim at trial. The appellant raised some concern about whether an incompetent person should be further defined to exclude those who are intoxicated but not unconscious or otherwise unaware. The military judge determined that additional instruction was not necessary as the allegation was not whether SSgt SF was intoxicated but rather whether she was unconscious or otherwise unaware. Whether a military judge properly instructs the court members is a question of law we review de novo. *United States v. McDonald*, 57 M.J. 18, 20 (C.A.A.F. 2002). If there was no objection at trial we review for plain error, which requires (1) error, (2) that is plain or obvious, and (3) that it impacts a substantial right of the appellant. *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000) (citing *United States v. Finster*, 51 M.J. 185, 187 (C.A.A.F. 1999)). The appellant bears the burden of persuading this court of the plain error. *See United States v. Powell*, 49 M.J. 460, 464–65 (C.A.A.F. 1998). We determine there was no plain error in the military judge's instructions. We agree with the military judge that the underlying reason for SSgt SF's unconsciousness was not an element of the offense but instead was part of

---

[2] Executive Order 13643 was published on 15 May 2013, prior to the adjournment of the appellant's court-martial. It includes the maximum punishments for Article 120, UCMJ, 10 U.S.C. § 920, offenses but does not include any elements, explanation, lesser included offenses, or sample specifications.

[3] Until the President issues an Executive Order that includes sample specifications we strongly encourage the use of the complete statutory language.

the evidence the members could consider in deciding if the prosecution proved the elements and disproved any affirmative defenses beyond a reasonable doubt.

*Legal and Factual Sufficiency*

The appellant challenges the legal and factual sufficiency of his convictions.  He argues that the evidence at best proved that SSgt SF was asleep when the sexual intercourse occurred and that a person who is asleep is not someone who is "unconscious or otherwise unaware."

We review issues of legal and factual sufficiency de novo.  *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).  "The test for legal sufficiency of the evidence is whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt."  *United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002) (quoting *United States v. Turner*, 25 M.J. 324 (C.M.A. 1987)) (internal quotation marks omitted).  "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution."  *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001).  Our assessment of legal sufficiency is limited to the evidence produced at trial.  *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt."  *Turner*, 25 M.J. at 325, *quoted in United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000).  In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt."  *Washington*, 57 M.J. at 399.

Having evaluated the entire record of trial, we are convinced of the legal and factual sufficiency of the appellant's convictions.  The appellant's confession, as corroborated by the other evidence regarding the offense when viewed in the light most favorable to the prosecution, establishes each element of each offense and therefore is legally sufficient.  SSgt SF testified that she fell asleep in the car and woke up with the realization that someone had sexual intercourse with her when she was unaware, combined with the circumstantial evidence that it was the appellant, also establishes the legal sufficiency of the conviction.

The appellant confessed that the sexual intercourse occurred after SSgt SF "passed out."  SSgt SF said she was "knocked out" like she was going to sleep.  We acknowledge that there was no medical evidence introduced on SSgt SF's blood alcohol content and

the effect that would have on her consciousness. In this case, whether SSgt SF was unconscious due to alcohol consumption, being exhausted, or a combination of the two is only relevant to determining whether the appellant knew or reasonably should have known she was "unconscious or otherwise unaware." Having personally reviewed the entire record of trial, to include the testimony of all the witnesses and all the admitted exhibits, we ourselves are personally convinced of the appellant's guilt. We are convinced beyond a reasonable doubt that the appellant knew SSgt SF was unconscious or otherwise unware that the sexual act was occurring. The appellant's conviction on the charge and specification is both legally and factually sufficient.

*Maximum Sentence*

At the time of the appellant's offense, 25 November 2012, the current version of Article 120, UCMJ, did not have an Executive Order that listed maximum punishment for that offense.[4] At trial and again on appeal, the appellant challenges the determination of the maximum sentence. The trial judge determined that the maximum sentence was a dishonorable discharge, forfeiture of all pay and allowances, confinement for 30 years, and reduction to E-1. The maximum punishment authorized for an offense is a question of law, which we review de novo. *United States v. Beaty*, 70 M.J. 39, 41 (C.A.A.F. 2011). Our colleagues in a sister-service court analyzed this same issue of the maximum imposable sentence for an offense that occurred after the enactment of the current Article 120, UCMJ, but before the publication of the President's Executive Order establishing the maximum sentence for a sexual assault against an individual who was asleep, unconscious, or otherwise unaware. *United States v. Booker*, 72 M.J. 787 (N.M. Ct. Crim. App. 2013), *appeal denied sub nom United States v. Schaleger*, 73 M.J. 92 (C.A.A.F. 2013) (summary disposition). That court concluded that the maximum authorized punishment included 30 years confinement and a dishonorable discharge. *Id.* at 807. We find their reasoning highly persuasive and concur with both our Navy-Marine Corps Court colleagues and the trial judge.

*Post-trial Processing*

The appellant's court-martial concluded on 22 June 2013, and the convening authority took action 121 days later on 21 October 2013. The appellant argues that pursuant to *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006), this violated his right to speedy appellate review. We disagree.

We review de novo whether an appellant has been denied the due process right to speedy post-trial review and whether any constitutional error is harmless beyond a reasonable doubt. *United States v. Allison*, 63 M.J. 365, 370 (C.A.A.F. 2006). The

---

[4] On 15 May 2013, a month prior to the appellant's trial, the President amended the Manual for Courts-Martial to establish the maximum punishment as including a dishonorable discharge and confinement for thirty years. Executive Order 13643 of 15 May 2013.

overall delay of more than 120 days between adjournment and action is presumptively unreasonable and triggers an analysis of the four factors elucidated in *Barker v. Wingo*, 407 U.S. 514 (1972), adopted in *Moreno*, 63 M.J. at 142. Those factors are "(1) the length of the delay; (2) the reasons for the delay; (3) whether the appellant made a demand for a speedy trial; and (4) prejudice to the appellant." *United States v. Mizgala*, 61 M.J. 122, 129 (C.A.A.F. 2005) (citing *Barker*, 407 U.S. at 530).

The first factor weighs in favor of the appellant; the length of the delay is presumptively unreasonable and therefore satisfies the first *Barker* factor. *See Moreno*, 63 M.J. at 142. The second factor weighs minimally in favor of the appellant. The record of trial was sent to the appellant and trial defense counsel on 26 March 2013. The staff judge advocate's recommendation was served on trial defense counsel on 17 September 2013, and the appellant signed a receipt for it on 24 September 2013. The appellant submitted his initial clemency request on 3 October 2013. The addendum was completed on 15 October 2013. The court reporter's chronology demonstrates a dedicated and responsible court reporter who through no fault of her own was furloughed for 5 days while this case was being transcribed. The government decided to furlough court reporters at the expense of potential violations of *Moreno* standards. We recognize that the base legal office had limited decision making on the furlough of civilian employees, however, the appellant had even less input on this decision. We point this problem out because had the furlough been reduced by even one day, then the standards would likely have been met. We are mindful of our superior court's emphasis that the 120-day period after the conclusion of trial is not a "free" period, and "personnel and administrative issues . . . are not legitimate reasons justifying otherwise unreasonable post-trial delay." *United States v. Arriaga*, 70 M.J. 51, 57 (C.A.A.F. 2011). Regarding the third factor, although the government carries the burden of primary responsibility for speedy post-trial processing, *United States v. Bodkins*, 60 M.J. 322, 323–24 (C.A.A.F. 2004), the appellant did not assert his right to speedy post-trial processing until he filed his assignment of errors on 5 September 2014. Finally, on the fourth factor, the appellant fails to articulate any prejudice in this case, other than a concern his confinement might have been oppressive upon a successful appeal. "An appellant must demonstrate a 'particularized anxiety or concern that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision.'" *Arriaga*, 70 M.J. at 58 (quoting *Moreno*, 63 M.J. at 140). Here, the appellant has not done so.

When there is no showing of prejudice under the fourth factor, "we will find a due process violation only when, in balancing the other three factors, the delay is so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). Having considered the totality of the circumstances and the entire record, when we balance the other three factors, we find the post-trial delay in this case is not so egregious as to adversely affect the public's perception of fairness and integrity of

the military justice system. We are convinced the error is harmless beyond a reasonable doubt.

While we find the post-trial delay was harmless, that does not end our analysis. Article 66(c), UCMJ, 10 U.S.C. § 866(c), empowers appellate courts to grant sentence relief for excessive post-trial delay without the showing of actual prejudice required by Article 59(a), UCMJ, 10 U.S.C. § 859(a). *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002); *see also United States v. Harvey*, 64 M.J. 13, 24 (C.A.A.F. 2006). In *United States v. Brown*, 62 M.J. 602, 606–07 (N.M. Ct. Crim. App. 2005), our Navy and Marine Court colleagues identified a "non-exhaustive" list of factors to consider in evaluating whether Article 66(c), UCMJ, relief should be granted for post-trial delay. Among the non-prejudicial factors are the length and reasons for the delay, the length and complexity of the record, the offenses involved, and the evidence of bad faith or gross negligence in the post-trial process. *Id.* at 607. We have addressed several of these factors above in our *Moreno* analysis. The record of trial was 8 volumes with 955 pages of transcript, 25 prosecution exhibits, and 60 appellate exhibits. The nature of the offense is described in detail earlier in this opinion. We find there was no bad faith or gross negligence in the post-trial processing, and the length of delay was minimal. We conclude that sentence relief under Article 66(c), UCMJ, is not warranted.

*Conclusion*

The findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ. Accordingly, the findings and sentence are

AFFIRMED.

FOR THE COURT

LEAH M. CALAHAN
Deputy Clerk of the Court